No. 5314.

### A. ROCHEREAU ET AL. VS. WILLIAM McC. JONES ET AL.

The illegal cancellation of an official bond will not release the sureties on the bond, from their liability for any official delinquency of their principal.

The sureties on the official bond of a notary public are liable for any loss, or damage caused by his affixing his notarial paraph to any mortgage note which he knew to be forged. And any one injured by his act, has a right of action on the bond against his sureties.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier*, J. C. E. Schmidt, for plaintiffs and appellees. *William Grant*, for defendants.

The opinion of the court was delivered by DeBlanc, J.

One of the defendants, William McC. Jones, was, in 1869, a notary public of the parish of Orleans. As such he gave two bonds, one on the twenty-eighth of July, 1869, the other on the fifteenth of August, 1870. The condition of each of said bonds is "that said Jones shall well and faithfully discharge and perform all the duties incumbent upon him as a notary public, in accordance with the laws of the State." In substance, the aforesaid condition is that fixed by an act of the Legislature approved on the twelfth of March, 1857, and which provides "that the notaries appointed for the parish of Orleans shall give bond in the sum of five thousand dollars, subscribed in favor of the Governor of the State, and conditioned as the law directs, for the faithful performance of their duties."

The other defendants are Edward H. Wilson and the legal representatives of Samuel S. Green, the sureties on the bond furnished by Jones in 1869.

The plaintiffs have brought suit against said defendants for $1241 31, with five per cent interest thereon from the thirty-first of December, 1872, for this: They allege that on the thirtieth of December, 1871, one August Hoffman, by act passed before said Jones as a notary, sold to the Union Band Association No. 1, for twenty-six hundred dollars, the property described in said act. One third of the price was paid in cash; for the balance the association, through its president, furnished two notes of each $866 66⅔, drawn and indorsed by said association. These notes were delivered to the vendor, and were in his possession on the day of the trial of this case.

Between the thirtieth of December, 1871, when these notes were furnished by the Union Band Association, and the third of May, 1872, Jones forged two notes exactly similar to those drawn by said association in favor of Hoffman, and attached to those forgeries, in red ink, the following certificate, to wit: *Ne varietur, secured by mortgage by act passed before me and stamped three dollars. New Orleans, December* 30,

1871. That certificate is signed *William McC. Jones, notary public.* On the first of May, 1872, representing these notes as those which had been subscribed by the association, and which were secured by the vendor's mortgage and privilege, he offered to sell them to plaintiffs, aware as he was that they were in the habit of investing in mortgage paper. Plaintiffs' attorney was instructed to examine the act of sale with which those notes were identified and the title to the property sold. This he did, and the report being favorable, plaintiffs purchased the notes for $1707 28, paid to said Jones on the third of May, 1872.

At the maturity of the first of said notes, with a view of concealing his fraud and his crime, Jones paid on account of the same the sum of $422 40, and by misrepresentation obtained a delay for the payment of the balance. The extended delay expired, and plaintiff sued out executory process to enforce payment of the balance due to their firm on the discounted notes, and ascertained then that they held but mere forgeries, which they were induced to buy because they appeared to be secured by the vendor's mortgage and privilege, a fact certified to by said notary's signature, which was known to plaintiffs.

Defendants aver that said plaintiffs have no cause of action; that the bond given by Jones and signed by them in 1869 was canceled before the act of malfeasance charged against said Jones, by virtue of an order from C. C. Antoine, then acting as Governor, on the fifteenth of September, 1873, six days after plaintiffs had filed their suits against defendants, and notwithstanding plaintiffs' protest against the canceling of said bond, filed in the office of the Secretary of State within the delay prescribed by law. They further contend in their defense that, if the bond of 1869 was not annulled by the aforesaid order, it was superseded by the bond executed in 1870 by said Jones and other sureties, and they relieved from all liability.

In May, 1872, when Jones discounted and transferred the notes he had forged, the bond of 1869 was not and could not have been legally canceled, and no subsequent cancellation of that bond could impair or destroy a right previously acquired. At and after the date of the forgery, and at and after the date of his fraudulent transfer to plaintiffs, Jones was a notary public of the parish of Orleans. There is an admission that he was suspended from the exercise of his functions as such on the twenty-fifth of August, 1873, but that suspension is not equivalent to the vacancy which happens by the resignation, death, or dismissal of an officer, or by the expiration of his term of office. It is only from the date of that vacancy that an application can be made to raise and annul the officer's bond, and only from that date that the Governor is authorized to order a publication of any such application. It is useless, then, to discuss the demerits of the course pursued in this instance by

Jones's sureties, the Secretary of State, and the acting Governor. They are fraught with the most patent and unjustifiable irregularity; a carelessness which has not an excuse, not a pretext to stand upon. V. R. S., section 359.

Was the bond of 1869 superseded by that of 1870, as contended by appellants? The reasons urged by their able counsel are insufficient, and we have looked in vain for any in our statutes and reports to support that pretension. Under the former legislation the term of office of a notary was fixed at four years, since then that term continues as long as he renews his bond within the delay prescribed by law, and that delay is of five years. Therefore Jones's bond of 1869 remained in force until at least the twenty-eighth of July, 1873, if we measure that bond by the term of the four years commission; otherwise, until the twenty-eighth of July, 1874, and it was in May, 1872, that he was guilty of the offense charged against him. V. R. S., sections 2505, 2506.

If, within the prescribed delay, officers were allowed to give several bonds instead of one, where the validity and sufficiency of that one are undisputed, what confusion might ensue. They might, with a considerable degree of impunity, fail in the discharge of their duties or violate their obligations, and as very often the dates of these omissions and commissions could not be ascertained or made to correspond with the dates of either the previous or ulterior bonds, the sureties of the offender could seldom be reached.

From the evidence on file in regard to said bonds we conclude that the sureties' right to apply for the canceling of that given in 1869 had not accrued; that under the circumstances the acting Governor was without authority to issue even a notice of their application; that the granting of said application was unwarranted in law, unwarranted by the facts; that if said notice had not been premature, the protest of plaintiffs was filed within the time and at the place indicated by law, and that from the date of that protest the Governor's duty was to refer the parties to a court of competent jurisdiction. He has not done so, and the bond of 1869 is neither canceled nor superseded. V. R. S., section 361.

The appellants have called our attention to a section of the Revised Statutes of 1876, which provides "that the notary's bond is for the faithful performance of all the duties required by law toward all persons who may employ him in his profession of notary," and that the letter of that section excludes plaintiffs from the list of those who can proceed on that bond, for the reason that they had not employed Jones, and he was not acting for them. The answer to that is that the act of 1857, the only one that applies to this case, fixes as the broad and legitimate condition of the notary's bond, that he shall faithfully perform his duties in that capacity.

Rochereau vs. Jones.

Has he complied with or has he violated that obligation? We fully concur in the proposition invoked by appellants' counsel "that he did not bind himself for Jones's good behavior as an individual." If, then, as a notary, from the twenty-eighth day of July, 1869, when he gave his bond, until the third of May, 1872, when he stole the price of his forgery, he has faithfully performed his duties as a notary of the parish of Orleans, appellants' defense must prevail.

In matters of sales on terms, when notes are furnished by the vendor, what is the duty imposed on the notary? He shall attest each of the notes by putting his name on them, mentioning the date of the act from which the mortgage and privilege are derived, under the penalty of damages. R. C. C., 3384. That attestation, the notary's name, his signature, those distinct and deceitful badges of simulated authenticity, are on the face of the discounted notes. The forgery is not that of an individual, but of the notary; his signature on those notes disguised and concealed the criminal fabrication, justified the conviction of their reality, left no room for suspicion and doubt, and was, as to the form and legal existence of those instruments, the principal, nay, the only cause which induced an acceptance of their transfer. Was not that forgery a violation of his official duty? If not, what would amount to or constitute such a violation?

Had he not attached his signature to the attestation and his official capacity to his signature, however guilty he would have been, his sureties on his bond would not have been responsible. Had he discounted or sold notes forged by another notary, or by any one else but himself, he alone would have been liable. But, can his sureties be released when the evidence establishes beyond contradiction that it was as a notary he forged the notes, as a notary that he forged the signature of the parties to the act, and that it was his signature as a notary that gave to those notes that form, that character, without which they could not have been converted into money? The attorneys representing appellants rely on decisions of this court reported in the sixth and sixteenth Annuals. Those decisions we adhere to. If interested parties deposit funds with a notary and he fails to account for those funds, his sureties are not liable; and why? Because, as his office is not one of deposit, he was trusted and received the deposit, not as an officer, but as an individual. The doctrine cited by Burge is to the same effect, that in Scotland the sureties of messengers and notaries, when the latter act in another and different capacity—for instance, the first as agents, the others as town clerks—are not liable for their errors and neglects in the last-mentioned capacity, and in support of that incontrovertible opinion he cites a maxim as ancient as legislation:

" Losqu'on se rend caution pour quelqu'un, l'engagement ne va pas

au-delà de la somme ou de la cause exprimée; on ne se rend pas non plus responsable des dommages qui peuvent naître d'unec ause étran- gère au cautionnement."

We find in Burge, page 49, " that the surety of a public officer is re- sponsible only for those acts which are done by virtue, or under color, or by means of the office he holds." Jones's forgery, his fraud, was suc- cessful; and why? Because they were perpetrated under color and by means of the office he held. His capacity and his offense can not be asseverated.

High and important functions are intrusted to notaries; they are in- vested with grave and extensive duties; they are charged with the solemn preparation of the authentic evidence of our transactions, of last wills, of those titles which pass from one generation to another. Their responsibility is as high as their trust, and a notary who officially certifies as true what he knows to be false violates his duty, commits a crime, forfeits his bond, binds himself, and binds his sureties.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be and it is hereby affirmed at appellants' costs.

---

## DISSENTING OPINION.

MARR, J. I am not able to concur in the opinion of the majority of the court just pronounced in this case.

I differ with my brethren on a single point only, and the range of in- quiry is within very narrow limits, depending upon the meaning and effect of article 3384 (3347) of the Civil Code, which is as follows:

"Every notary before whom an act shall have been passed by which notes to order have been given for the payment of a debt bearing a privi- lege or mortgage, shall attest each of the notes by putting his name on them, mentioning the date of the act from which the privilege or mort- gage is derived, under the penalty of damages."

An act of sale was passed before Jones, a notary, and two notes were given for the deferred payments of the price, bearing vendor's mortgage. It was the official duty of Jones to paraph these notes, and if he had failed to do so he would have been liable in damages. He did all with respect to these two notes that the law, that his official duty, required. He chose to do something more. After his entire official duty with re- spect to these two notes had been performed, he made two other notes, exactly the counterpart of the two real notes. He forged the signature of the maker and indorser. He paraphed these forgeries, just as he had paraphed the two real notes, and he sold these forged notes to Roche- reau & Co.

Rochereau & Co. took these forged notes on the faith of the paraph of

Rochereau vs. Jones.

Jones, and when the forgery was discovered they sued Jones and the sureties on his official bond. The condition of the bond is that Jones shall "well and faithfully discharge and perform all the duties incumbent upon him as a notary public, in and for the parish of Orleans, in accordance with the laws of the State of Louisiana."

No complaint is made that Jones did not do all that the law and duty required of him touching the act and the two genuine notes, and when he forged two other notes, and put his paraph upon them, he was not doing any act required of him by law, he was not in the performance of any duty, he was simply committing a crime which the law forbids and punishes.

The act of 1857 requires notaries to give bond for "the faithful performance of their duties." R. S. of 1870, sec. 2521. Section 2503 of the Revised Statutes directs that the condition of the notary's bond shall be for "the faithful performance of all duties required by law toward all persons who may employ him in his profession of notary." The condition of the bond differs from that prescribed in this section, but the enactment is a correct exposition of the intention of the Legislature with respect to the liability of the sureties of the notary. They are answerable to those who employ the notary in his profession for his failure to perform his professional duty.

Rochereau & Co. did not employ Jones. The parties to the act of sale employed him, and he performed his entire duty to them. He committed a crime, and defrauded persons who had not employed him in his profession as notary, which his position as notary enabled him to do, and Rochereau & Co. were the victims. In all this criminal conduct he did not fail to perform his official duty toward any person who had employed him in his profession. He simply violated his duty as a citizen by committing a crime against the peace and dignity of the State.

Davis vs. Barham, 1 An. 528, it seems to me, does not authorize the interpretation which has been put upon it. Barham was sheriff of Morehouse parish. Davis had obtained a judgment against Hall, and an execution was issued upon that judgment, and was put into the hands of Barham, to be levied upon certain slaves, the property of Hall, and in his possession. Barham had ample time to levy on the slaves. Instead of doing this, which his official duty required, he sent word to Hall to get the slaves out of the way before a certain hour, or, he would be at his house at that hour to make the levy. Hall took the slaves into the State of Arkansas, and when Barham arrived at his house with the writ the property was beyond his reach, as Barham intended and arranged beforehand. Failing to make his debt, Davis sued Barham and his sureties, and they were held liable.

The difference between that case and this is manifest. Barham, as

Rochereau vs. Jones.

sheriff, had received the writ. He knew where the property was; it was within his reach. If, instead of sending a messenger to Hall warning him to remove his property, he had gone with the writ, he would have found and have levied on the slaves. It was a clear case of failure on his part to perform an official duty which it was perfectly in his power to have performed, and which he willfully and purposely failed to perform, simply because he did not choose and did not intend to perform it. He and his sureties were not held liable for a wrongful act not pertaining to his official duty, for doing something which the law prohibits and punishes as a crime, but for not doing what the law specially required him to do, which he simply refused to do, and which he placed it out of his power to do, when the performance was perfectly within his power.

The law does not require, nor does it authorize, the notary to paraph notes generally. It is not his business to paraph any and all notes. His duty and power in this respect are restricted to notes which are to be identified with acts passed before him, stipulating a privilege or mortgage. This means real, genuine notes, not forgeries, which are only the false semblance of notes. The law requires no official act of the notary touching forged notes, and all that Jones did with respect to these forgeries was entirely unofficial, a gross fraud and crime, for which his sureties, in my opinion, are not amenable.

I differ with the other members of the court with reluctance. I distrust the correctness of my own opinions in opposition to theirs, but with a clear conviction that the official bond of the notary extends to and secures nothing more than the performance of the official duties imposed upon him by law, and that the crime and fraud of Jones in this case were wholly outside of any duty pertaining to his profession as notary, I am constrained to put upon record the reasons upon which my conclusions are based.