BREAUX, O. J.
Alleging that J. Q. Gow-land, notary public, forged 10 notes of which plaintiff is the holder, plaintiff brought this suit thereon against Gowland and his surety, the Fidelity & Deposit Company of Maryland, in solido, to recover the sum of $14,400, with 8 per cent, interest.
He paid full value for the notes to Gow-land.
He alleged that he accepted them, paid for them, on the faith of the paraph of the notary, that he believed they were secured by mortgage and vendor’s privilege.
That there was no mortgage or vendor’s privilege, although the notary said to plaintiff that they were secured by mortgage and privilege.
That the mortgage notes which are described in the petition were not of record in the recorder’s office, nor was there anything of record showing their verity.
For a number of years plaintiff had been dealing with the notary. From time to time the notary would call upon him with a note of $1,000 and ask him if he desired to invest.
The plaiutiff took up different notes at different times, until they aggregated in his hands the sum claimed by him as due by the notary and the surety bn his bond.
The complaint is that the notary was unfaithful to his trust, and thereby broke the condition of his bond, and rendered his surety liable.
The United States Safety Deposit & Savings Bank intervened in the suit, alleging that on January 12, 1909, through its cashier, it loaned to the Columbia Realty Company the sum of $2,500 on- the latter’s promissory note, drawn to the maker’s own order, and by him indorsed in blank, bearing 7 per cent, interest from date, secured by mortgage granted by the Columbia Realty Company in favor of Miltenberger, cashier, by act before the same notary, on property described in its petition of intervention.
This note of $500 was covered by subsequent note and mortgage, and was in consequence returned to Gowland, notary, as sat-islied.
The mortgage for $500 was not recorded at all by the notary, and as to the second mortgage although it contains the declaration as follows:
“By reference to the mortgage certificate hereto annexed it will be seen that said property is free from all incumbrances, except the assumption by the mortgagor herein of a mortgage granted by William Gowland to Wm. L. Milten-berger, as per act before the undersigned notary,” January 21, 1909.
This mortgage was not the first in rank; it was only the third in rank. No certificate of mortgage was ever produced by the notary and attached to the act.
We are informed that the officer of the bank before named read the act, and then it was read by the notary, in which it was stated that the mortgage was first in rank.
That it was signed by the mortgagor and mortgagee.
That some time thereafter it became known that instead of a first mortgage it was a third mortgage.
*677 The property was of less value than the first two mortgages.
Intervener at this point invokes article 33G4 of the Civil Code, which provides:
“Every notary who shall pass an act of sale, mortgage, or donation of an immovable, shall be bound to obtain from the office of mortgages of the place where the immovable is situated, a certificate declaring the privileges or mortgages which may be inscribed on the object of the contract, and to mention them in his act, under penalty of damages toward the party who may suffer by his neglect in this respect.”
And the notary must see that “tases for three years past have been paid.”
The defendant joined issue with plaintiff, admitted that it was surety on the bond, but denied that plaintiff employed the notary to make the investment (that the employment was per parol); averred that he trusted the notary personally, and not as an officer; that plaintiff was influenced by consideration of friendship for and confidence in Gowland, and not by the fact that he was a notary; that plaintiff was negligent; that he should have examined the record, which would have disclosed to him the forgery charged; that' the note was not such a deception and snare as plaintiff charges.
It avers that there are other claims upon the bond largely in excess of the amount claimed by plaintiff, and that if judgment is rendered for plaintiff the amount collected should be restricted to his pro rata, and respondent’s right to force a concurso reserved.
Returning to plaintiff, Harz, he (made defendant in intervention) filed an exception to the petition of intervention because of want of jurisdiction, want of interest, and no cause of action.
Taking up defendant’s plea to the intervention, it denied all of intervener’s allegations, and reiterated that the claim of Harz exceeds the sum of $10,000; that the maximum liability on the bond is that sum; and that, if any judgment is rendered, the judgment should be decreed payable pro rata out of the amount just stated.
The notary sued made no answer. There was as to him confirmation of the judgment by default.
On the merits there was judgment-in favor of plaintiff against defendant, also in favor of intervener “amount of the bond due, to be' prorated between plaintiff and intervener.”
The notes, beyond question, including the paraph, were forged. They had no other effect save that which the notary sought to. give to it by his forgery.
The question arises whether his surety is liable on its bond.
We are of opinion that it is. He, the notary, was acting in his official capacity, and in that capacity called upon the plaintiff and informed him, substantially, of the notes, and of their validity, stated where the property mortgaged was situated.
As relates to the paraph ne varietur, there was nothing done or said to place the investor upon inquiry.
The paraph is the official signature, and evidence of the reality and genuineness of the note on which it is written.
The officer is commissioned as a notary to pass acts of mortgage and of sale. Part of the duty consists in adding the words required in paraphing a note and his signature. He answers for’ its genuineness. His paraph is generally received in evidence in courts of justice. It is taken as true. The notary who offers this signature to an investor violates the duties devolving upon a notary if he thus forges the note and affixes his par-aph in order to better enable him to deceive and induce the one to whom he proposes to take it up.
These notes were made payable to bearer.
The act of paraphing the forged note was an offense committed as notary.
The paraph is an act, one which he is au *679 thorized to perform as notary) and not personally.
In the Roehereau Case, 29 La. Ann. 82, the syllabus- clearly announces the principle of the decision.
“The sureties on the official bond of a notary public are liable for any loss or damage caused by bis affixing his notarial paraph to any mortgage note which he knew to be forged.”
' In the body of the decision the court says:
" “The forgery is not that of the individual, hut of the notary.”
It must be borne in mind that in this decision the question rested on the fact that the paraph was a deception and a fraud, -because the notary knew that the purported identification was no identification because of the fraud.
The same in substance is the case before us for decision.
The paraph is official. It identifies the note. Succession of Johnson, 3 Rob. 218.
The legal paraph is evidence of identity with a genuine act.
Every notary shall “attest each of the notes” by putting his name on them and date of the act. Article 3384.
Each of the notes in question is paraphed ne varietur for identification, the usual par-aph in such cases.
In another decision the court emphasized the rule laid down substantially in preceding cases:
“The surety’s liability will arise if he does not perform and discharge the duties imposed upon him by law.” Schmidt v. Drouet, 42 La. Ann. 1068, 8 South. 396, 21 Am. St. Rep. 408.
In a recent case the court was still more emphatic and direct upon the subject.
Paraphing the note is a notarial function, for the nondischarge or improper discharge of which the notary and his surety may be held liable to any one who may be thereby injured. Nolan v. Labatut, 117 La. 431, 41 South. 713.
The next proposition of the defendant is that, even if the notes had been genuine, plaintiff! ought not to recover because there was no property in existence and the notary was insolvent.
True, the paraph of the notary does not guarantee either the value of the property nor the rank -of the mortgage.
It, beyond question,, ought to guarantee the genuineness -of the note and of the mortgage with which it is identified.
While it guarantees neither of these important considerations — -i. e., value of the property or rank of the mortgage — if a forgery is resorted to in order to transfer the note, the notary and his surety are liable.
There is a personal liability,on the note, and a guaranty that the notary will not resort to dishonest methods in discharging the duties of his office.
The fraud committed gives rise to liability, and not the partial or entire want of value, or the absence of all act of mortgage.
The plaintiff attached a responsibility to the office of notary which it does not have. That after years of confidence he had become overconfident in the integrity of the notary, and trusted him personally, and not as notary, to assist him in making his investment, is the next ground, in substance, urged by learned counsel.
Under .the laws he was warranted in giving weight to the acts of the notary, and the fact that he had confidence in him personally d-oes not have the effect of defeating the right to recover on the bond.
There is no complete similarity between the case of one of the forged notes and the other nine, also forged. The facts and circumstances are not the same, for at the time that the last-mentioned notes were handed to him he immediately handed his check for *681 each as they were received from the notary.
As to the other, the one note, he trusted the officer to an extent that gives it the appearance of a personal transaction between man and man.
Plaintiff left the $1,000 negotiable check for this note with the officer; the latter assuring him that he ought to be trusted, as he is liable on .his bond for any failure to account for the amount.
For these reasons, the judgment will remain unchanged in this respect.
Now as to the amount of interest, the next question at issue.
Plaintiff asked for interest at the rate of 8 per cent, from the date of failure of payment.
Defendant’s contention is that, if any amount at all be due, it bears interest at the rate of 5 per cent, from judicial demand.
The interest at 8 per cent, is due only when the promise to pay is evidenced by writing.
Plaintiff has no written evidence.
It follows that the amount due is 5 per cent.
As to date, it should be from the time that defendant committed the act charged. From that date he became actively indebted for amount and interest.
We will not dwell upon the intervener’s cause.
The notary became indebted for the amount as made evident by the statement of facts, and by our view, and by our opinion above.
Here, again, he failed to perform the duty incumbent upon him as notary. He must suffer the consequences. The demand of inter-vener as heretofore granted is sustained, and the judgment as to it is maintained.
For reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from is affirmed.