(62 South. 221.)

No. 19,755.

HARZ v. GOWLAND et al.

(Jan. 20, 1913. On Rehearing, May 26, 1913.)

*(Syllabus by the Court.)*

1. NOTARIES (§ 10*)—LIABILITIES—NEGLIGENCE—DAMAGES.

Where the holder of a mortgage note has sustained a loss through the negligence of a notary in not procuring a proper mortgage certificate showing the existence of a prior mortgage on the same premises, in a suit against the notary and his surety the measure of damage is the amount of the mortgage debt and interest which has been lost by reason of the existence of the prior incumbrance on the property. In such a case, the considera-tion paid for the mortgage note does not concern the defendants.

[Ed. Note.—For other cases, see Notaries, Cent. Dig. §§ 19–27; Dec. Dig. § 10.*]

On Rehearing.

2. NOTARIES (§ 10*)—LIABILITY FOR NEGLIGENCE—MEASURE OF DAMAGES.

Where one gives a worthless mortgage note of $1,000 in part payment of another note for $2,500, secured by a mortgage which the purchaser believes to be a first mortgage, but which in reality is a second mortgage, and the holder of the note subsequently sues the notary because he failed to produce the proper mortgage certificate, the notary is liable in damages for only the cash paid and the value of the forged note which he gave in part payment of the other note. In other words, the purchaser of the note for $2,500 is not entitled to recover the face value of the note, but is allowed to recover only the actual value which he gave for it.

[Ed. Note.—For other cases, see Notaries, Cent. Dig. §§ 19–27; Dec. Dig. § 10.*]

Land, J., dissents.

Case Certified from Court of Appeal, Parish of Orleans.

Action by Joseph Harz against Mr. and Mrs. Joseph Q. Gowland and others. Case certified from the Court of Appeal for instructions. Instructions according to opinion.

Edgar M. Cahn, of New Orleans, for appellant. Gustave Lemle and P. M. Milner, both of New Orleans, for appellees.

LAND, J. Pursuant to article 101 of the Constitution of 1898, the judges of the Court of Appeal for the Parish of Orleans have applied to the Supreme Court for instructions as to the proper decision to be made in the above-entitled case, which is stated by them as follows, to wit:

Statement.

"On June 29, 1907, by an act before Charles G. Gill, notary public, Mrs. Joseph Q. Gowland, duly authorized by her husband, purchased from William Gowland, Jr., a certain piece of real estate in New Orleans for the sum of $3,500, $1,000 of which was paid cash and the credit portion was represented by a mortgage note for $2,500, payable one year after date, bearing 8 per cent. interest from date, June 29, 1907. The $2,500 note was purchased by Harz

on July 11, 1907, from Joseph Q. Gowland on the faith of the mortgage certificate annexed to the act of Charles G. Gill, notary, which declared that the property was free from all mortgages and incumbrances."

"The consideration paid Gowland by Harz was $1,500 cash, and the surrender of an unmatured mortgage note for $1,000, paraphed by Joseph Q. Gowland, notary, purporting to be executed by one Dickson, a fictitious party, which note and mortgage proved to be fraudulent. This fraudulent note had previously been purchased for $1,000 cash by Harz from Gowland. Mr. Gill, the notary, did not obtain from the mortgage office a certificate in the name of the vendor, William Gowland, as required by article 3364, R. C. C., but he annexed to his act of mortgage a certificate originally issued in the name of George Gowland, which had after execution and delivery been transferred by J. Q. Gowland so as to erase the name George Gowland and substitute therefor that of William Gowland, Jr., the vendor.

"It was subsequently discovered that the recital of the certificate annexed to the act was untrue, and that a prior mortgage for $3,000 rested on the property. The property upon which this prior mortgage rested was sold under foreclosure to satisfy the same, and the balance of proceeds of that sale left after satisfying the prior mortgage was $975.53, which was imputed in part payment on the note for $2,500 held by Harz."

"Harz thereupon brought suit against Charles G. Gill, the officiating notary, the Fidelity & Deposit Company of Maryland, surety on his official bond, Joseph Q. Gowland and his wife, in solido, for $2,500 with interest at the rate of 8 per cent. per annum and attorney's fees of 5 per cent. thereon, subject to a credit of $975.53. J. Q. Gowland is insolvent, and the property mortgaged was of sufficient value to pay the $2,500 note in full."

"It is conceded by all parties that the character of Mr. Gill, the notary, is above reproach, and that his asserted liability is based exclusively on the ground of negligence or breach of statutory duty in the securing of the mortgage certificates."

"Plaintiff's argument is that Gill is liable for violation of duty, because he failed to obtain personally from the proper officer, and to annex to the act, a certificate in the name of the vendor, William Gowland, Jr., which, if produced, would have shown the existence of a prior mortgage for $3,000 in favor of the Crescent Building & Homestead Association. But for the false recital of the certificate upon which the plaintiff relies the latter would not have bought the note, and hence would not have suffered loss. The proximate cause of the loss sustained by the plaintiff was the failure of the notary to discharge his official duties in the manner required by the laws of the state."

"For the same reason the surety on the notary's official bond is liable."

"The plaintiff claims that the notary and his surety are liable for the full amount of the debt and interest intended to be secured by the mortgage note of $2,500 less the credit of $975.53 collected already, and he cites in support of this claim the following authorities: Rochereau v. Jones, 29 La. Ann. 82; Nolan v. Labatut, 117 La. 447, 41 South. 713; Flannagan v. Spitzfaden, 7 Court of Appeal, 230, and authorities therein cited; Spiro v. Am. Bonding Co., 8 Court of Appeal, 182; Harz v. Gowland, 126 La. 674, 52 South. 986; 29 Cyc. 1091; Sutherland on Damages, p. 1334, par. 488."

"The notary and surety, defendants, argue that they cannot be held for more than the amount paid by Harz for the $2,500 note, namely, $1,500 less the credit received at the foreclosure sale, and they further argue that the fictitious Dickson note with which he additionally parted represented a loss previously incurred by Harz through the fraud of Gowland and one in no manner due to the fault of Gill."

"In support of this they rely upon the cases of Nolan v. Labatut, 117 La. Ann. 447, 41 South. 713, and Cluseau v. Wagner, 126 La. 375, 52 South. 547, and Harz v. Gowland, 126 La. 674, 52 South. 986, in which they claim that the Supreme Court found "the measure of damages to be the amount actually paid by the party in the purchase of the note and 5 per cent. interest from the date of purchase."

"In the case of Flannagan v. Spitzfaden et al., 7 Court of Appeal, in which your honors refused a writ of review, we used the following language: 'Under the foregoing there can be no doubt as to the surety's liability for the loss caused the plaintiff by the act of the notary. Such loss is the amount which the plaintiff would have received had the forged note been genuine and includes the interest agreed upon as well as the principal; both are equally liquidated and could have been realized. * * * The measure of damages is the amount of the debt and interest intended to be secured by the mortgage.' This appears to us as in accord with the general trend of jurisprudence."

"In Harz v. Gowland, 126 La. 679, 52 South. 987, your honors said:

" 'The next proposition of the defendant is that, even if the notes had been genuine, plaintiff ought not to recover because there was no property in existence and the notary was insolvent. * * * There is a personal liability on the note, and a guaranty that the notary will not resort to dishonest methods in discharging the duties of his office. The fraud committed gives rise to liability, and not the partial or entire want of value, or the absence of all acts of mortgage.' "

"The only difference between the instant case and those cited is that the latter arose from fraud in the official act of the notary, and this case involves damages arising from a breach of statutory duty on the part of the notary. The measure of damage is necessarily the same in both cases."

"Considering the claim made that the deci-

sions in Cluseau v. Wagner and Harz v. Gowland establish a rule for measuring damages different from that established by Flannagan v. Spitzfaden, in which your honors refused a writ of review, we have reached the conclusion that a request for instructions would be proper in the premises. We therefore submit for answer the following question:

## "Question.

"Under the foregoing state of facts, which rule as to the measure of damages should be adopted—the one which prescribes that plaintiff is entitled to receive the amount he would have recovered had there been no breach of statutory duty, that is, the sum of $2,500 with 8 per cent. interest from June 29, 1907, less a credit of $975.53 already received; or the one which prescribes that plaintiff is entitled to recover simply the cash he paid plus the value, whatever it may have been, of the forged and fraudulent $1,000 mortgage note less the credit of $975.53, already received?"

## Answer.

[1] The cases cited by the defendants do not support their contention.

The mortgage note for $2,500 was purchased by the plaintiff from Joseph Q. Gowland on the faith of the mortgage certificate of the defendant notary which declared that the property was free from all other mortgages and incumbrances. Plaintiff purchased the note from Joseph Q. Gowland, who had previously sold to the plaintiff a mortgage note for $1,000, duly paraphed by said Gowland as notary. In the sale of the note for $2,500, the consideration was the sum of $1,500 paid in cash and the surrender of the note for $1,000. The latter note turned out to be a forgery, but, as it was paraphed by Gowland as notary, he and his official surety were responsible for any loss or damage that may have been sustained by the plaintiff, or any other bona fide holder of the note. Therefore it cannot be said that the mortgage note for $1,000 was worthless in the hands of the plaintiff. As a matter of fact, Gowland, who as notary had certified to the genuineness of the note, took it as cash, and it served all the purposes of cash in the sale of the note for $2,500 by Gowland to the plaintiff. The consideration that plaintiff paid for the mortgage note for $2,500 does not concern the defendant notary and surety. Plaintiff acquired by his purchase the legal right to collect the full amount of the note, and, if he has been prevented from so doing by the negligence of the notary, he is entitled to recover the loss he has sustained, which in this case is the amount of the note, with accrued interest, less the payment received by him out of the proceeds of the sale of the mortgaged premises; and we so instruct the judges of the Court of Appeal.

## On Rehearing.

BREAUX, C. J. [2] The learned counsel for defendant represent that Mr. Gill, notary public, was requested by another notary public, Joseph Q. Gowland, who was also a practicing attorney, to act as notary in passing an act in which Mrs. Jos. Q. Gowland was the vendee and William Gowland, brother of Joseph Q. Gowland, was the vendor. The sale was for cash and part on credit; the last-named Gowland prepared the act and obtained a certificate from the recorder's office, which was attached thereto.

Mr. Gill passed the act free of charge only to accommodate his fellow notary, Joseph Q. Gowland.

A note for $1,500, in part payment of the purchase price, was signed by the purchaser; it was paraphed ne varietur by Notary Gill.

The vendor, William Gowland, warranted the property free from mortgage, and the certificate showed that there was no anterior mortgage. This was incorrect.

It is stated that the officer in the mortgage office issued the certificate applied for by Joseph Q. Gowland in the name of George Gowland. The certificate does not show a mortgage in the name of the vendor for the reason that the certificate was altered, it is alleged by Joseph Q. Gowland. Subsequent-

ly, the name of George, the real mortgagor, was erased, and the name of William was substituted. It was charged that the alteration was the work of Joseph Q. Gowland. The certificate as changed was false and was the cause of the error and loss.

As a result of the change in name it was made to appear to Notary Gill that there was no mortgage on the property while there was a prior mortgage on the property.

This statement is not denied by any one.

The note for $2,500, representing the credit portion of the purchase price, was handed by William Gowland to his brother Jos. Q. Gowland, and by Jos. Q. Gowland to Joseph Harz. Harz paid therefor $1,500 in cash and a note which Harz held for $1,000, of which W. H. Dickson, an alleged fictitious person, was the ostensible maker. This note, transferred by Jos. Q. Gowland, was entirely worthless according to the statement before us; no act of mortgage was passed before Jos. Q. Gowland to secure the note. This note was acquired several months before the purchase by Harz of the $2,500 note.

Jos. Q. Gowland is charged with the forgery of the $1,000 note (the Dickson note).

Harz had other notes transferred to him by Gowland on which he brought suit against Gowland and the surety on his bond as notary and exhausted the bond, except a small amount which was paid to another creditor of Gowland. Harz v. Gowland, 126 La. 674, 52 South. 986.

No one charges Gill with wrongdoing. The argument is not on those lines.

Learned counsel for Harz in the brief states that he heartily concurs in the statement that Gill is a lawyer and a gentleman above reproach. The only averment in so far as he is concerned is that he, having paraphed the $2,500 mortgage note bought by Harz, did not in person obtain a mortgage certificate from the mortgage office for the parish of Orleans in the name of the vendor

133 LA.—2

of the property sold by William Gowland, Jr., to Mrs. Jos. Q. Gowland, as required by Civil Code, 3364; that he, Gill, trusted Jos. Q. Gowland, and that he made the change before mentioned.

On foreclosure on the property in question, the holder of the first mortgage note for $3,000 collected sufficient to pay an amount over his claim and left a balance of $975.53, which was handed to Joseph Harz in part satisfaction of his claim.

The following is the article upon which plaintiff relies to recover the damages claimed by him:

"Every notary who shall pass an act of sale, mortgage or donation of an immovable shall be bound to obtain from the office of mortgages of the place where the immovable is situated a certificate disclosing the privileges or mortgages which may be inscribed on the object of the contract and to mention them in his act under penalty of damages toward the party who may suffer by his neglect in that respect."

We have found difficulty in determining whether the $1,000 before referred to should be charged to Gill, the notary. As to the other amounts, there is no difficulty. It is as stated in our opinion heretofore handed down.

Plaintiff paid this amount of $1,000 and had every reason to think that the note for that amount was good. He surrendered it for another note involving another loan for a larger amount.

New questions have been brought up by relator's counsel in argument on rehearing. They were not brought up and argued originally. We will not consider them. We will consider only questions propounded by the Court of Appeal. Other questions we do not consider as before us at all.

It is alleged that the loss of this amount of the note—$1,000—had been incurred at the time that Gill passed the act. The errone-

ous certificate did not give it effect. He, plaintiff, as urged by respondent, had no title at the time that the said certificate was issued.

Learned counsel for plaintiff, Harz, by way of illustration in argument said:

"Let us assume that it had been given to Harz for a mere song; he, Harz, would have had the right to recover on the note."

In answer we will state he would have had a title in that case. Here he has none. He had only a worthless claim which was completely lost as relates to issues before us for the purpose of obtaining the amount. It cannot have effect against Gill; he is bound for the loss he has occasioned, not for an amount lost which plaintiff failed to secure. Harz, as relates to the $1,000, parted with nothing. Harz had been a loser on this last-mentioned note for some time; he had suffered the damage long before the act was passed.

If the note of plaintiff had any value, he is entitled to recover the same, but not its face value, against any one responsible for the loss. We do not think it is Gill.

Harz is put in the same position he would have been had the notary Gill obtained a regular and correct certificate of mortgage. He, Harz, would not have bought the note and his loss would have been the $1,000 note.

French jurisprudence cited in argument has established a difference in France between notaries liable as in the case before us and those who have acted in bad faith and criminally. The former are not entirely relieved from liability; they must pay the actual damage which they occasion. We quote the French authorities. They are: Laurent, vol. 3, § 420, p. 12; Larombiere, vol. 7, No. 37, arts. 1382, 1880; Sardot, Responsibility, vol. 1, § 42 et seq.; Dalloz, Civil Code, vol. 1, p. 692, No. 199, 3d Ed.

The question presented is:

"What rule as to measure of damages should be adopted—the one which prescribes that plaintiff is entitled to receive the amount he would have recovered had there been no breach of statutory duty, that is the sum of $2,500, with 8 per cent. interest from June 29, 1907, less a credit of $975.53 already received; or the one which prescribes that plaintiff is entitled to recover simply the cash he paid plus the value, whatever it may have been, of the forged and fraudulent $1,000 note less a credit of $975.53 already received?"

The first of the questions is answered, "No," as to amount in excess of $1,500. The alternative question is answered, "Yes." Plaintiff is entitled to recover the cash he paid, i. e., $1,500, plus the value, whatever it may have been, of the mortgage note of $1,000 less $975.53 already received.

Our decree heretofore handed down is only reinstated to the extent that it agrees with the foregoing answer. In other respects, it is annulled, avoided, and reversed. The foregoing is our answer to the questions propounded.

LAND, J., dissents, and adheres to the views expressed in the original opinion.

SOMMERVILLE, J., takes no part.