420 So.2d 197 (1982)
SUMMERS BROTHERS, INC., et al.
v.
Douglas W. BREWER, et al.
No. 14679.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
On Rehearing May 25, 1982.
W. Leonard Werner, Baton Rouge, for plaintiffs-appellants, Summers Bros., Inc., Leo G. Summers, and Leo M. Summers.
James Earrier, Robert W. Williams, III, Baton Rouge, for defendant-appellant, A. J. Paul Fredrickson.
A. J. Paul Fredrickson, Baton Rouge, pro se.
Daniel J. Dziuba, Baton Rouge, for defendant-appellee, Aetna Life and Cas. Co.
Douglas W. Brewer, Baton Rouge, pro se.
Doris Gates Rankin, Baton Rouge, for defendant-appellant, Donald J. Mills.
*198 Donald J. Mills, Baton Rouge, pro se.
LeRoy A. Hartley, Marvin Duke, New Orleans, for defendant-appellee, Richard Collier.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This action commenced as a petition for damages brought by Summers Brothers, Inc., Leo G. Summers and Leo M. Summers against Douglas W. Brewer, Donald J. Mills, A. J. Paul Fredrickson, II, Richard Collier, Gulf Coast Construction and Maintenance, Inc., and Aetna Casualty and Surety Company.
Plaintiff, Summers Brothers, Inc., is a Louisiana corporation domiciled in East Baton Rouge Parish, Louisiana, engaged in the business of leasing construction equipment. Leo G. Summers and Leo M. Summers are father and son and are the President and Secretary-Treasurer, respectively, of Summers Brothers, Inc.
Defendant, Douglas W. Brewer, prior to the matters giving rise to this lawsuit, was an acquaintance of plaintiffs. Brewer contacted plaintiffs and advised them Quinco Construction Company had a maintenance contract with Triad Chemical Company that it, Quinco, was about to lose. He told the plaintiffs he thought he could secure the maintenance contract with Triad, which contract would require the use of construction equipment. Brewer advised the plaintiffs that if he could secure the maintenance contract, it would be through a corporation which he would form and plaintiffs could lease equipment to the corporation and purchase stock in it. Brewer informed them that $1,250.00 would be needed to accomplish the foregoing. These funds were to be used to offset certain expenses, such as travel, but were to be primarily used for legal expenses in securing the contract and forming the corporation. He advised plaintiffs that if he were unsuccessful in securing the maintenance contract, the $1,250.00 would be returned to them.
Thereupon, on August 5, 1976, Summers Brothers, Inc. advanced the requested sum of money to Brewer. A few days later, Brewer advised plaintiffs that he had been successful in securing the contract with Triad. He presented to them a written maintenance contract, dated August 9, 1976, between Gulf Coast Construction and Maintenance, Inc. and Triad Chemical Company. This contract, in authentic form, purportedly had been executed by Triad Chemical Company through Lee Dowdy, its general manager, and by Gulf Coast through Brewer, its president, in the presence of two witnesses and defendant, Donald J. Mills, an attorney practicing law in Baton Rouge, in his capacity as a Notary Public. Plaintiffs accepted the contract as genuine because of its apparent authenticity.
Discussions then followed concerning plaintiffs purchasing stock in Gulf Coast. Leo G. Summers and Leo M. Summers delivered to Brewer $3,000.00 for the purchase of stock in this corporation. On the following day, Brewer returned with two stock certificates (75 shares of stock to each Summers) of Gulf Coast Construction Maintenance, Inc., one registered in the name of Leo G. Summers, and one in the name of Leo M. Summers. The certificates were signed by Douglas W. Brewer as president of Gulf Coast and by defendant, Mr. A. J. Paul Fredrickson, II, as its secretary-treasurer. Plaintiffs believed the stock certificates were genuine because of their apparent validity.
Discussions regarding the leasing of equipment by Summers Brothers to Gulf Coast for use by the latter in the performance of its contract with Triad then took place between Brewer and the Summerses. These discussions culminated in a written contract between Summers Brothers and Gulf Coast at a rental rate of $17,330.40 per month.
Summers Brothers owned some of the equipment called for by this lease, but not all. To fulfill its obligations under the contract, Summers Brothers leased equipment from Head and Engquist Equipment, Inc. *199 for a term of one year. To further fulfill its obligations on the lease contract, Summers Brothers purchased eight welding machines. Brewer advised plaintiff that a friend of his, defendant, Richard Collier, owned welding equipment which was for sale. Several phone calls transpired between plaintiffs and Collier. An agreement was reached whereby Summers Brothers would purchase three of the welding machines for $3,600.00 and five of the machines, which were not in as good a condition as the first three, for $3,000.00.
Summers Brothers delivered a check to Brewer dated September 15, 1976, in the sum of $1,800.00 payable to the order of Richard Collier as a down payment on the three welding machines. Subsequently, Summers Brothers delivered to Brewer $4,800.00, $1,800.00 in a check dated September 21, 1976, for the balance of the price on the first three machines and $3,000.00 in a check dated October 1, 1976, for the price of the remaining five machines, for payment to Collier.
While the foregoing was in progress, Brewer requested plaintiffs to loan him various funds. Believing him to be a business associate who had successfully secured a maintenance contract with Triad for Gulf Coast, who had assisted them in purchasing stock in Gulf Coast, and who had on behalf of Gulf Coast contracted with the Summers Brothers for the lease of equipment, and who was assisting in the purchase of welding equipment from Collier, Summers Brothers, on August 24, 1976, loaned to Brewer $580.00, and on September 28, 1976, loaned him an additional $500.00. On October 1, 1976, Brewer delivered to Summers Brothers a check for $1,080.00 in repayment of these loans.
On October 4, 1976, plaintiffs contacted the law office of Fredrickson, seeking verification of the serial numbers of the welding equipment. Fredrickson verified the numbers as correct.
Shortly thereafter the check for $1,080.00, issued by Brewer in payment of the loans made to him, was returned because of insufficient funds. Plaintiffs then discovered the contract between Triad and Gulf Coast was a forgery; and that the stock certificates of Gulf Coast which they had purchased were invalid because Fredrickson was not an officer of Gulf Coast despite his signature thereon as its secretary-treasurer. The welding equipment purchased from Collier was non-existent. Head and Engquist Equipment, Inc. sued the plaintiffs for the equipment leased to Summers Brothers, making it necessary for the plaintiffs to pay Head and Engquist $3,500.00. Because of the lease contract it had with Gulf Coast, Summers Brothers' equipment was tied up for approximately one month, causing them to lose a month's equipment rental.
Subsequently, the plaintiffs brought suit against the defendants as set out above. Judgment was rendered in favor of plaintiffs, as follows:
"IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein:
"1. In favor of Summers Brothers, Inc. and against Douglas W. Brewer in the sum of Twenty-six Thousand Two Hundred Sixty and 40/100 ($26,260.40) Dollars, together with legal interest thereon at the rate of seven (7%) per cent per annum from August 8, 1977, until paid;
"2. In favor of Summers Brothers, Inc. and against Douglas W. Brewer in the additional sum of Two Thousand Five Hundred and No/100 ($2,500.00) Dollars, together with legal interest thereon at the rate of seven (7%) per cent per annum from March 1, 1979, until paid;
"3. In favor of Leo G. Summers and against Douglas W. Brewer in the sum of One Thousand Five Hundred and No/100 ($1,500.00) Dollars, together with legal interest thereon at the rate of seven (7%) per cent per annum from August 8, 1977, until paid;
"4. In favor of Leo M. Summers and against Douglas W. Brewer in the sum of One Thousand Five Hundred and No/100 ($1,500.00) Dollars, together *200 with legal interest thereon at the rate of seven (7%) per cent per annum from August 8, 1977, until paid;
"5. In favor of Summers Brothers, Inc., Leo G. Summers, and Leo M. Summers and against Douglas W. Brewer in the additional sum of Four Thousand and No/100 ($4,000.00) Dollars for application on their attorney fees in this matter, together with legal interest thereon at the rate of seven (7%) per cent per annum from February 5, 1981, until paid;
"6. In favor of Summers Brothers, Inc., Leo G. Summers and Leo M. Summers and against Douglas W. Brewer, A. J. Paul Fredrickson, II, Donald J. Mills, and the latter's surety company, the Aetna Casualty & Surety Company of Hartford, Connecticut, in solido, in the sum of Eleven Thousand Eight Hundred and No/100 ($11,800.00) Dollars, with the liability of the Aetna Casualty & Surety Company of Hartford, Connecticut limited to the principal sum of One Thousand and No/100 ($1,000.00) Dollars, which is the amount of its surety bond with Donald J. Mills, together with legal interest thereon on the aforesaid sum of Eleven Thousand Eight Hundred and No/100 ($11,800.00) Dollars at the rate of seven (7%) per cent per annum from August 8, 1977 until paid;
"7. In favor of Summers Brothers, Inc., Leo G. Summers and Leo M. Summers and against Richard Collier in the sum of Three Hundred and No/100 ($300.00) Dollars, together with legal interest thereon at the rate of seven (7%) per cent per annum from August 8, 1977 until paid;
"8. Fixing the amount of the expert witness fee of Robert G. Foley in the sum of One Hundred Fifty and No/100 ($150.00) Dollars and assessing the same as court costs;
"9. In favor of Summers Brothers, Inc., Leo G. Summers and Leo M. Summers and against the defendants, Douglas W. Brewer, A. J. Paul Fredrickson, II, Donald J. Mills, and Richard Collier for all costs of court as follows:
A. Douglas W. Brewer, 72% of court costs
B. Douglas W. Brewer, A. J. Paul Fredrickson, II, and Donald J. Mills, in solido, 27% of court costs
C. Richard Collier, 1% of court costs."
The lower court also dismissed the reconventional demand by Fredrickson.
In reaching its decision, the trial court assigned oral reasons for judgment, as follows:
"BY THE COURT:
"This is suit number 204,486, on the docket of the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, State of Louisiana, case styled Summers Brothers, Incorporated, et al versus Douglas M. [W.] Brewer, et al.
"The Court would like to say at the outset that it has been called upon to render decisions in numerous cases in its time on this bench. Some of the decisions that it has had to make have been rather distasteful. This one today falls in the category of distasteful to this Court because it involves two members of the bar of East Baton Rouge Parish and the State of Louisiana, one of which has been practicing law since 1968 and the other since 1972. Those gentlemen to whom I refer are therefore not novices in the practice of law.
"This matter involves the negotiations with the Summers Brothers, Incorporated and/or Mr. Leo G. and Mr. Leo M. Summers, a father and son who are President and one of the principal stockholders in Summers Brothers, Incorporated, in their dealings with a[n] admitted felon, Douglas W. Brewer, who is at the present time serving time for a felony theft arising out of this exact matter that is the subject of this litigation. And Mr. Brewer, on the witness stand, by his own admission, has been one of the best `con men in the business', with which this court completely agrees.
"Sometime in the middle part of 1976 Brewer concocted a scheme whereby he intended *201 to rig a purported contract between Triad Chemical Company and Gulf Coast Construction & Maintenance, Inc., a corporation that he intended to form for the purpose of perpetrating a fraud on any or anybody that was available for perpetration of such a fraud and he chose as his selected target Summers Brothers, Incorporated to carry out his scheme.
"A contract between Triad and Gulf Coast, prior to the time of this negotiation with theabout the contract, a corporation was started up by Mr. Paul Fredrickson, attorney at law,A. J. Paul Fredrickson, II, prepared the incorporation papers. Brewer then drew up a contract between Triad Chemical Company and Gulf Coast, Brewer's Construction & Maintenance Corporation just formed recently, on this contract, forged the signatures of Mr. Lee Dowty as a representative of Triad. Mr. Dowty's signature having been forged by his own admission, by Douglas Brewer, as well as one of the witnesses, Mr. William J. Braud, who was another employee of Triad Chemical Company, and presented to Mr. Donald J. Mills, a Notary Public of East Baton Rouge Parish, so that the same might be notarized. The only actual signatures as far as this court can determine that were on that document were that of Terry Nelson, a part-time secretary in the office of Mr. Fredrickson, who had on occasion accommodated Mr. Mills by acting as a witness on documents. According to her testimony she only remained in the office for approximately one weekDouglas Brewer and Donald J. Mills.
"According to the testimony of Mr. Robert G. Foley, a handwriting expert, there's no question that the name of Lee Dowty, the last name of which incidentally was misspelled, was a forgery. This was admitted by Brewer. It was also his testimony that in his opinion, the signature of Mr. Braud, one of the witnesses to the document, was also a forgery. There's no question in the court's mind that the signature of Donald J. Mills, who acted as Notary on this document, is genuine. There is also no question in the court's mind that Mr. Mills affixed his signature and his notary seal after all the signatures had been affixed thereto and this is not in accordance with the law and the jurisprudence of this state.
"There is a third nameda fourth named defendant, if you're counting Brewer who's already stipulated his liability here, and that is Mr. Richard Collier. Something that Mr. Collier's got going for him that cannot be said of the other two defendants is that at the time of his involvement in this matter he was not a lawyer, he was not a business man, but was a student residing in the same complex with Mr. Douglas Brewer. He, nevertheless, is involved in it.
"There were some stock certificates issued from the corporation to the two Summers' [sic], Mr. Leo G. and Mr. Leo M., for seventy-five (75) shares of stock to each. And to his credit, in his testimony, Mr. Fredrickson said, `I don't know why I let him do it, but I did sign as Secretary-Treasurer of that corporation,' knowing that he was not Secretary of that corporation, and the Court will not hear the argument that he could have gotten up a resolution to the effect that he was made Secretary-Treasurer. As a matter of fact, he was not made Secretary-Treasurer, and when Mr. Brewer presented the stock certificates to him he signed with full knowledge that he was dealing with a known felon. Where he got the stock certificates, Brewer himself said he got them out of the drawer of Mr. Fredrickson's law office. For whatever purposes, Mr. Fredrickson made his office space and that of Mr. Mills available to a known felon for whatever activities he chose to engage in, use in that bases and operationthat base of operation.
"Relying on the documents notarized by Mr. Mills, the stock certificates issued by Mr. Brewer who filled them out himself, signed his name as President of the corporation and had Mr. Fredrickson join him as the Secretary-Treasurer of the corporation, presented them to the Summers' [sic], collected money for the stock certificates talking about Brewer, not Fredrickson.
"Now, as far as the business of the there was some testimony to the effect that *202 some Twelve Hundred and Fifty Dollars ($1250.00) was advanced by Summers to Brewer prior to the time that they became aware of the fact that there was a notarized contract or bogusthose stock certificates that had been issued, well that's Twelve Hundred and Fifty Dollars ($1250.00) the Summers [sic] threw away, because they didn't have any business giving him any start-up money to go down there and tell those people what he was doing and allegedly to tell them what thatfor travel expenses and under the table business. So you can forget that Twelve Hundred and Fifty Dollars ($1250.00).
"But when they started to rely on those documents that had been executed by or in the presence of these other defendants, the Court takes a different approach to that. Now, there's been a good deal said about whether or not there was actual fraud involved in this matter as far as Mr. Fredrickson and Mr. Mills were concerned. The Court will say, categorically at the outset, that it does not believe that Paul Fredrickson and Donald Mills engaged in active fraud or a scheme designed to deprive Summers Brothers of their money. The Court does, however, feel that there is an area that it chooses to call `gray', into which they did become involved to an extent that relying on the documents that were either signed by them or in some other way to which they attached their signatures and upon which the Summers Brothers relied on the dealings with a known felon, Douglas W. Brewer, then they did get involved in this matter.
"Now, the Reconventional Demand filed on behalf of Mr. Paul Fredrickson has been dismissed as far as this lawsuit is concerned. So this Court is not called uponis not concerning itself with any action he might have as far as fraud is concerned. The Court is relying on the belief that on the pleadings filed herein, that as far as their involvement to the extent that the Summers Brothers were deprived of cash money out-of-pocket, on reliance on these documents, that we're talking about here this morning, that they very well might be involved as far as constructive fraud is concerned.
"As the Court has said, Brewer has individually entered into a Stipulation of liabilitywhere is that Stipulation? That's Fredrickson-1. And that Stipulation entered inbyinentered into the record as Fredrickson Number-1, which is a copy of that Stipulation, the Court will now read that Stipulation and make it the judgment of this Court.
"`It is hereby stipulated and agreed by and between Summers Brothers, Incorporated, Leo G. Summers and Leo M. Summers, Plaintiffs in the above numbered and entitled cause, and Douglas W. Brewer, one of the Defendants in the above numbered and entitled cause, as follows:
"`That there be judgment herein in favor of Summers Brothers, Incorporated and against Douglas Brewer in the sum of Twenty-Six Thousand, Two Hundred Sixty Dollars and Forty Cents ($26,260.40), together with legal interest thereon at the rate of seven percent (7%) per annum from August 8th, 1977, until paid.
"`2. That there be judgment herein in favor of Summers Brothers, Incorporated and against Douglas W. Brewer in the additional sum of Two Thousand, Five Hundred Dollars ($2,500.00), which is the amount Summers Brothers, Incorporated paid to Head & [sic] Engquist, Incorporated, together with the legal interest thereon at the rate of seven percent (7%) per annum from March 1st, 1979, until paid.
"`3. That there be judgment herein in favor of Leo G. Summers and against Douglas W. Brewer in the sum of One Thousand, Five Hundred Dollars ($1,500.00), together with legal interest thereon at the rate of seven percent (7%) per annum from August 8th, 1977, until paid.
"`That there be judgment herein in favor of Leo M. Summers and against Douglas W. Brewer in the sum of One Thousand, Five Hundred Dollars ($1,500.00), together with legal interest thereon at the rate of seven percent (7%) per annum from August 8th, 1977, until paid.
*203 "`5. That there be judgment herein in favor of Summers Brothers, Incorporated, Leo G. Summers and Leo M. Summers and against Douglas W. Brewer in the sum of Four Thousand Dollars ($4,000.00) for application of their attorney fees in this matter, together with legal interests thereon at the rate of seven percent (7%) per annum from date of judgment for said sum until paid.
"`6. That there be judgment herein in favor of Summers Brothers, Incorporated, Leo G. Summers and Leo M. Summers and against Douglas W. Brewer for all costs of these proceedings. That Summers Brothers, Incorporated, Leo G. Summers and Leo M. Summers, preserve all of their rights, claims and causes of actions against the other defendants in this law suit.
"`That a judgment in accordance with this stipulation and agreement may be rendered and signed by the Court upon presentation of this stipulation to the Court without prior notice to any of the parties hereto, the parties hereto expressly waiving their presence, the hearing of this matter, and the rendention [sic] and signing of this judgment.'
"It is therefore the judgment of this Court that that Stipulation entered into by and between these parties and signed on the respective date shown on the Stipulation included herein is made the judgment of this Court to the extent that Douglas W. Brewer, defendant, is involved.
"According to the Court's calculations, according to the Stipulation, Mr. Brewer's involv[e]ment is for the total sum of Thirty-One Thousand, Seven Hundred Dollars ($31,700.00).
"It comes now to the involvement of Brewer, Fredrickson, and Mills, in solido, with regards to the activities that involve Mr. Fredrickson and Mr. Mills. According to the Court's calculations, the involvement of those two men in the securing by Brewer of money out of the pockets of the Summers Brothers, Incorporated and/or Leo G. and Leo M. Summers, is to the extent of Eleven Thousand, Eight Hundred Dollars ($11,800.00), which is broken down as follows: Three Thousand Dollars ($3,000.00) for the stock which is shown at P-6; a payment of Fifteen Hundred Dollars ($1500.00) for welding equipment shown at P-9. And at this point is where Mr. Collier comes into the picture because the check was actually issued for Eighteen Hundred Dollars ($1800.00), Three Hundred Dollars ($300.00) of which went to Richard Collier, the other Fifteen Hundred Dollars ($1500.00) to Mr. Brewer. P-10 shows the payment of Eighteen Hundred Dollars ($1800.00) for welding equipment, and a final check in the amount of Three Thousand Dollars ($3,000.00) shown at P-11, the final payment on that welding equipment. An additional sum of Twenty-five Hundred Dollars ($2500.00) based on a negotiated deal with Head & [sic] Engquist Equipment Company which resulted in a law suit against Summers Brothers, Incorporated and/or Leo M. or Leo G. Summers in the amount of Twenty-five Hundred Dollars ($2500.00), making a total of Eleven Thousand, Eight Hundred Dollars ($11,800.00).
"For the amount of Eleven Thousand, Eight Hundred Dollars ($11,800.00) there will be judgment herein in favor of the plaintiffs and against defendants, Brewer, Fredrickson and Mills, in solido, for that amount.
"It is the furtherto be the judgment of this Court that there be judgment herein, in solido, between Donald J. Mills and his surety company, the Aetna Casualty & Surety Company of Hartford, Connecticut, in the amount of One Thousand Dollars ($1,000.00), being the amount of his surety bond as shown in the exhibits filed in this suit.
"The court costs, including the expert witness fee of Robert G. Foley in the amount of A Hundred and Fifty Dollars ($150.00), is to be borne by the defendants in the percentages set out as follows: Douglas M. BrewerDouglas W. Brewer, individually, seventy-two (72%) percent; Brewer, Fredrickson and Mills, in solido, twenty-seven (27%) percent;...
"Collier, individually, one (1%) percent. All judgments rendered by this Court this *204 date are to bear judicial interest from date of judicial demand, August 8, 1977.
"Now, with respect to Mr. Collier, individually, there will be judgment herein in favor of plaintiffs and against Richard Collier in the amount of Three Hundred Dollars ($300.00). That amount to bear judicial interest from date of judicial demand, August 8, 1977, until paid and his pro rata share of the costs as pointed out previously."
We have carefully reviewed the record, and find that the evidence amply supports the findings of the trial court. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
We find no merit in the contentions of Donald J. Mills that his acts as notary public were not a proximate cause of the plaintiffs' financial losses as set out above, or that he was not guilty of "constructive fraud", as suggested by the trial court.
Mills and Fredrickson have taken an appeal from the judgment of the District Court. Plaintiffs, Summers Brothers, Inc., Leo G. Summers, and Leo M. Summers, have answered these appeals, and have also taken an appeal from the judgment. Douglas W. Brewer, Richard Collier, and Aetna Casualty and Surety Company have neither appealed nor answered the appeal. We affirm.
It is settled that deliberate misfeasance of a notary public occurring during the course of his official notarial duties will subject the notary to liability for all damages sustained by the aggrieved party which are proximately caused by the misfeasance. See Annot., Liability of Notary Public or his Bond for Wilful or Deliberate Misconduct in Performance of Duties, 44 A.L.R.3d 1243. A notary is responsible to all persons who have been defrauded of their money as a consequence of their reliance upon the genuineness of any document executed by the notary public while in the performance of his official duties. See Lacour v. National Surety Co. of New York, 147 La. 586, 85 So. 600 (1920); Harz v. Gowland, 126 La. 674, 52 So. 986 (1910); Rochereau v. Jones, 29 La.Ann. 82 (1877).
In Rochereau, supra, the decision rested on the fact that the notary's paraph of promissory notes was a deception and fraud, because the notary knew that the purported identification of the notes with a mortgage was a fraud. The same in substance is the present case, as far as Mills is concerned. Even if Mills did not know that the signatures on the contract were forgeries, he knew that by authenticating the document, as notary, he was telling the world that the parties had appeared before him and affixed their signatures in his presence. Thus, he committed fraud in that he purposely let third parties rely on a document purporting to be genuine but actually without validity as an authentic act. The "proof" of validity he supplied was misleading to all who relied on the contract.
The plaintiffs on appeal argue that the judgment should have been in favor of the plaintiffs against all defendants, in solido, instead of just certain defendants, or the defendants severally, and that costs should also have been against all defendants, in solido. We disagree.
In order for solidary liability to exist, Brewer and each of the other defendants (Mills and Fredrickson) would have to be considered joint tortfeasors or joint wrongdoers under LSA-C.C. art. 2324. We find, as did the trial court, that this codal article has no application to the instant case. The various acts of which the defendants are accused were independent acts, with the fraudulent scheme of Brewer already set in motion before Mills and Fredrickson participated in the fraud. Furthermore, some of the damages caused to plaintiffs by Mills and Fredrickson were not the natural and foreseeable consequences of the earlier fraudulent acts of Brewer, but were rather the result of particular wrongdoing or fault on the part of Mills, as notary, or Fredrickson, as one pretending to be an officer of the corporation. See Weber v. McMillan, 285 So.2d 349 (La.App. 4 Cir. 1973), writs denied, 288 So.2d 357, 358 (La. 1974).
*205 As to the plaintiffs' complaint against the taxing of costs, LSA-C.C.P. art. 1920 authorizes the trial court to "render judgment for costs, or any part thereof, against any party, as it may consider equitable." We find no error in the trial court's assessment of costs. Metalock Corporation v. Metal-Locking of Louisiana, Inc., 260 So.2d 814 (La. App. 4 Cir. 1972), writs denied, 262 La. 189, 262 So.2d 788 (La.1972).
The plaintiffs' assignment of error pertaining to the trial judge's refusal to allow the plaintiffs to produce expert witnesses on the question of the reasonableness of the equipment rental rates is without merit. There was evidence in the record adequate for the trial court to properly consider this element of damages in his award. There was no reason for expert testimony on this item of damages. Moreover, the witnesses which plaintiffs sought to call on the trial as "expert witnesses" were listed on the pre-trial order as "fact witnesses." Calling a fact witness on the trial as an "expert witness" is not in compliance with the pre-trial order. If error were committed, it was harmless, and had no effect on the trial court's judgment.
Accordingly, for the assigned reasons, we affirm the judgment appealed at the costs of appellants, Donald J. Mills and A. J. Paul Fredrickson, II.
AFFIRMED.

ON REHEARING
PER CURIAM.
In our original decision, we affirmed the judgment of the trial court, which had the effect of fixing the interest allowed to petitioners at the rate of seven per cent per annum from August 8, 1977, the date of judicial demand, until paid. Our attention has been directed to LSA-C.C. art. 2924, as amended by Act 574 of 1981, in the application for rehearing on behalf of Summers Brothers, Inc., Leo G. Summers, and Leo M. Summers, and we have granted this application, on briefs previously filed, solely to consider the question of interest.
In view of LSA-C.C. art. 2924, as amended, we correct our judgment to amend the judgment of the trial court in the following respects:
The interest shall be seven per cent (7%) per annum from August 8, 1977, the date of judicial demand, until September 12, 1980; ten per cent (10%) per annum from September 12, 1980 until September 11, 1981; and twelve per cent (12%) per annum from September 11, 1981 until paid.
We deny the application for rehearing on the other questions presented therein, and affirm the judgment of the trial court in all other respects, at the costs of appellants, Donald J. Mills and A. J. Paul Fredrickson, II.
AMENDED AND, AS AMENDED, AFFIRMED.