(33 South. 742.)

No. 14,488.

STORK et al. v. AMERICAN SURETY CO. OF NEW YORK.

(Feb. 16, 1903.)

NOTARY PUBLIC — POWERS — CANCELLATION OF MORTGAGE—BOND—LIABILI-TIES—FRAUD.

1. The powers of a notary public are not all stated in section 2492 of the Revised Statutes.

2. The recorder of mortgages is authorized to cancel mortgages upon presentation of a certificate of notary.

3. The bond of the notary is executed to secure the duties incumbent upon him.

4. "In the case of solemn acts—that is, of acts which, in order to be valid, must be drawn after the fulfillment of certain specified formalities"—(Schmitt v. Drouet, 8 South. 396, 42 La. Ann. 1067, 21 Am. St. Rep. 408), the notary is liable, also his bondsman, if they are not drawn in legal form.

5. He and his bondsman are also liable if he is called upon to comply with the law as set forth in articles 3374 and 3383, Rev. Civ. Code, regarding cancellation of mortgages, and he fails to carry out directions to cancel the mortgages, and avails himself of the opportunity to commit a fraud upon the person by whom he is employed to see to the cancellation.

6. The notary was employed in that capacity, and was not employed as an attorney at law, as made evident by his receipt, and by the character of the act he had promised to perform.

7. The notary had funds in hand with which he had been intrusted as an agent, and from which he might have made tender of costs to recorder of mortgages, in order to obtain cancellation of the mortgage.

(Syllabus by the Court.)

Appeal from civil district court, parish of Orleans; John St. Paul, Judge.

Action by L. K. B. Stork and others against the American Surety Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Howe, Spencer & Cocke, for appellant. Harry H. Hall, for appellees. Rice & Montgomery, amici curæ.

BREAUX, J. Plaintiff, for herself, and as a natural tutrix, seeks to recover the sum of $2,777.34, with interest, from the defendant, on a notary's bond signed by it as the security of Sydney J. Heineman, lately a notary public in and for the city of New Orleans and parish of Orleans.

The surety company, in the year 1896, signed this notary's bond for $10,000. Its conditions were that this notary public would faithfully perform all the duties devolving upon him as notary public.

Plaintiff was the widow of the late L. K. B. Stork, who died leaving an indebtedness represented by notes secured by mortgage.

She took up these notes—two for $350 each, and one for $800, bearing interest. After she had paid these notes, she took them to the office of the notary, who also practiced as an attorney at law, and handed them to him, in order that he might have them canceled for her. This was the receipt he gave her:

"New Orleans, Dec. 3rd, 1896.

"Received of Mrs. L. K. Stork, three mortgage notes 800, 350, and $350, drawn by G. W. Stork, and paraphed 'Ne Varietur' by Joseph W. Taylor for cancellation;" and signed the receipt, adding the words "Notary Public" to his signature.

Heineman was employed by plaintiff to open the succession for her husband. He opened the estate a few days after the notes had been placed in his hands for cancellation. He asked for the appointment of a

notary to take the inventory. A notary was appointed, and an inventory made.

Instead of complying with the duty devolving upon him, he' sold these notes to Louis Spiro, appropriated the proceeds, and absconded.

Spiro instituted foreclosure proceedings, which she (plaintiff) defended unsuccessfully. The property mortgaged was sold at sheriff's sale to satisfy Spiro's judgment and costs, amounting to $2,777.34.

Plaintiff, having failed to sustain her claim to these notes secured by mortgage, as before stated, demands the amount of these notes of the notary's security.

Defendant controverts her claim on the ground that she lost nothing growing out of the failure of Heineman to perform any duty incumbent upon him as notary, and charges that plaintiff has none other than herself to blame for the damages she has suffered; that it was due to her own negligence and fault, for which it (defendant) is not responsible. Meyer H. Rothschild intervened in the suit, alleging that prior to defendant's becoming security on the bond sued upon he bound himself, as the security of the security company, against any loss or liability legally incurred by the company as the security of this notary. He avers his interest in the result of the suit, and joins the defendant in defending the cause. There is no dispute in relation to the fact to this point of the case.

Defendant urges, among other grounds, that Heineman was plaintiff's attorney in the matter of the succession of her husband; her advisor up to the time he absconded; was her agent, to whom she intrusted moneys for investment—services not devolving upon notaries under the law.

Plaintiff, as a witness, states she handed him (the notary) the notes to be canceled; that, in addition to fraudulently negotiating these notes, this notary left, and took with him $3,000 of her money she had intrusted him with for the purpose of investment in her name. Plaintiff learned that the notes had not been canceled immediately after Heineman had absconded.

## Opinion.

Defendant's principal on the bond was called upon as notary public by plaintiff to perform the duty of canceling the bond. He received her notes, and bound himself as notary to see to their cancellation in the office of the recorder of mortgages.

This would not bind the security on the bond, if, as contended by defendant, the duty was not one of those which a notary could be called upon to perform. Notaries have different duties to perform. They are public officers, whose duties are confined to a particular locality. They hold themselves out as trustworthy, and furnish bond in order to protect those who employ them against loss in case it is occasioned by their failure to properly discharge the duties with which they are intrusted. In accepting the office, he contracts the obligation to fill it intelligently and honestly.

The wrong of the notary for which the plaintiff seeks to hold his security bound was unquestionably a wrong committed when in the discharge of the duties of his office. He affixed his official signature to the receipt, and undertook to obtain a cancellation, with which a notary may, we think, be intrusted.

The responsibility of the security vel non on the bond presents a question more difficult to solve. The bond was given for the faithful .performance of the duties of his office. The liability, none the less, has been restricted as security to the faithful performance of such acts as "the law authorizes or requires him to do in his official capacity." Monrose v. Brocard, 20 La. Ann. 78.

Judged by that decision, we still think that the security is liable. This court expressed the view that section 2492, Rev. St., does not enumerate all the power of this officer, and his obligation is to perform all the duties incumbent upon him, or else he will be liable to those by whom he is employed, and, it follows, his security, also. Schmitt v. Drouet, 42 La. Ann. 1067, 8 South. 396, 21 Am. St. Rep. 408.

As a notary in the case in hand, he held evidence of payment of the mortgage. As a notary he had it in his power to require cancellation.

Having failed to discharge the duties he had assumed in that capacity, the condition of his bond was broken. Had he issued a certificate of payment with the note attached, or had he presented the note in person,

as he should have done, the mortgage could, and doubtless would, have been canceled by the recorder of mortgages.

The fact that the notary accepted the notes handed to him to have the mortgage canceled without the authentic deed, but assumed to perform the duty without it—a ·duty which he could perform with the notes in hand—cannot be construed, in our view, as a cause sufficient to release the security from all liability.

What more natural than for plaintiff, who employed him as an attorney to open the succession of her late husband, to repair to his office, hand him her notes that had been paid, and direct him, as notary, to have the mortgage canceled?

Why, everybody at one time or another employs notaries, and it is not negligence to employ them in haste to perform a notarial duty, without for an instant suspecting artifice or fraud on the part of this officer.

Defendant also contends that, if one of the persons must suffer, the loss should fall on him who has rendered the loss by his own conduct or neglect.

This plaintiff may have had too much confidence in this notary, but it does not appear that she was specially negligent.

If excess of confidence must be considered, it ·would have to relate back to the sureties themselves, who were equally as unfortunate, as the result shows.

Lastly, defendant and intervener urge that tender of costs of recorder of mortgages to the notary was prerequisite to liability of surety on his bond.

Here the unfaithful agent took plaintiff's money, and the absconding notary her notes—one and the same person.

The money taken by him as agent is not claimed, for the very good reason that it was not and could not have been received by the notary as a notary, but by the agent.

There was no necessity of a tender by plaintiff of the cost to have the mortgage canceled. He had appropriated enough of plaintiff's money already to pay the recorder of mortgages for the cost of cancellation, and this dispenses with all necessity of a tender, if tender was needed.

The law and the evidence being with plaintiff, the judgment is therefore affirmed.