THE TEXAS COMPANY v. MATTISON ET AL.

(December 16, 1929.  Opinion and Decree.)
(January 13, 1930.  Rehearing Refused.)

Borah, Himel & Bloch, of Franklin, attorneys for plaintiff, appellee.

Julius Howard Wiener and Sidney G. Roos, of New Orleans, attorneys for defendants, appellants.

JANVIER, J.  The Texas Company sues for the return of $1,250 claimed to have been deposited with Mattison, a real estate agent, one of the defendants, as 10 per cent of the purchase price of certain property which the Texas Company desired to purchase for the erection of an automobile filling station.

The other defendants, Cristina and Russell, are sureties in the sum of $5,000 each on the real estate agent's and broker's bond of Mattison.

So far as Mattison is concerned, there was no defense worthy of consideration, and he has not appealed from the judgment rendered solidarily against him and his two sureties.

Several defenses have been interposed by the sureties.  Two of them—one solely a question of fact and the other solely a

question of law—have required considerable consideration.

The sureties contend that, even if it be conceded that the money which was paid by the Texas Company to Mattison was a deposit made with a real estate agent, there is no authority in law for a real estate agent to receive and accept a deposit, and that thus, in receiving a deposit, a real estate agent acts not in his capacity as such, but in his individual capacity, and that therefore his sureties are not liable, since they, in signing his bond, agreed to indemnify persons who deal with him against losses resulting from his acts as a real estate agent, but not against losses resulting from his individual misdoings.

While there has been called to our attention no case in support of this contention, we assume that it is based on the many decisions as to the liability of sureties on notarial bonds. Brown vs. Schmidt, 7 La. Ann. 349; Lescouzeve vs. Ducatel, 18 La. Ann. 470; Monrose vs. Brocard, 20 La. Ann. 78; Schmitt vs. Drouet, 42 La. Ann. 1064, 8 So. 396, 21 Am. St. Rep. 408; Stork vs. American Surety Co., 109 La. 713, 33 So. 742; Nolan vs. Labatut, 117 La. 431, 41 So. 713; Harz vs. Gowland, 126 La. 674, 52 So. 986; Lacour vs. National Surety Co., 147 La. 586, 85 So. 600, 18 A. L. R. 1295.

It is quite true that, in all of the above cases, the court held that a surety is liable only for an act committed by the principal within the line of his duties and not for losses resulting from acts done in some other capacity than that which is protected by the bond, and it is equally true that, in those cases, the Supreme Court held that it is no part of the official duties of a notary public to receive money from one person to be delivered to another, or to be applied by the notary to the payment of some obligation, and that therefore a surety on a notarial bond is not liable for the misappropriation or misapplication of such money.

We are unable to see, however, that those cases are helpful in determining the question before us now, because here we are not concerned with whether or not it is a part of the duty of a notary public to receive money, but solely with whether or not it is a part of the duty of a real estate agent to do so.

Counsel for the sureties argues that the statute under which the bond was given, to-wit, Act No. 236 of 1920, defines the duties of real estate agents or brokers and that, since that act does not in specific terms include among those duties the receiving of deposits, it necessarily follows that to receive deposits is not one of the official duties of such agent or broker.

A careful reading of the act discloses that such a duty, to-wit, the receipt of deposits, is not specifically set forth among the duties of an agent.

But the main purpose of the act was to recognize the existence of and control the operations of such agents or brokers. What is an agent? Webster says that an agent is "one who acts for, or in the place of, another." If an agent is one who acts for another, his duties are to do what the other might do if acting for himself, and the limit within which he may act is the authority given him by the principal, and his bondsman is liable, provided the act which he is authorized to do is such an act as is ordinarily done in the conduct of that particular kind of agency. The act does state that a real estate agent or broker is one who buys or sells, or negotiates for the purchase or sale of real estate for another. Surely, if that other

188

were acting for himself, he could receive a deposit or earnest money or a payment on account of the purchase price. If that other, the principal, instead of acting for himself employs a real estate agent to act for him, he thus authorizes the real estate agent to do any and all things necessary and customary to carry out the purposes for which he was employed. It is very evident, then, since the owner could himself have received the payment on account of the purchase price, it would not be contrary to custom, nor without the range of the contemplation of the surety, that the owner should authorize the agent to receive it for him. It appears quite evident that Mattison was employed by the Texas Company to negotiate for it and in its name for the purchase of the desired property. His authority was fixed and limited in the contract. He was to negotiate for the purchase of the property for not more than $12,500, and he was to advise the Texas Company if the property could be purchased for this price, in which event the Texas Company agreed to turn over to Mattison $1,250 to be applied on account of the purchase price. It was certainly within the contemplated duties of Mattison as a real estate agent that, in such case, he would receive a deposit from his principal and would pay it over to the prospective vendor or the agent of the prospective vendor. Therefore, in receiving the $1,250 from the Texas Company, Mattison was plainly acting within the scope of his duties as a real estate agent within the contemplation of the statute in question. It necessarily follows that, since he did not return the deposit and did not pay it over to the person to whom it should have gone had the deal been consummated, his sureties are liable. Furthermore, while we have been unable to find any case in which our Supreme Court, after a consideration of the question, has decided that a real estate agent is authorized by the statute to receive deposits, there are many cases in which the Supreme Court has recognized the existence of the custom, notably Maloney vs. Aschaffenburg, 143 La. 509, 78 So. 761, in which the court said:

"Where a broker is employed to sell property and closes an agreement for its sale, he becomes agent of both the seller and the purchaser; and where, as a result of such agreement, the purchaser deposits with him 10 per cent. of the amount of the purchase price, the seller may not sue the broker to recover such deposit, without properly impleading the purchaser and making him a party to such suit."

This brings us to a discussion of the question of fact raised by one of the defenses of the sureties. In the above discussion of the question of law, we have assumed the facts to be, as we are quite convinced they were, that Mattison was employed as an agent to buy the property, and that the contract was not made with him as the owner of the property with the view that the purchase was to be made from him as principal.

Mattison and his sureties contend that he was not employed as an agent, but that the Texas Company sought him out and negotiated with him for the purchase from him of the property in question. The truth is that Mattison did not own the property, and that he was a regularly licensed and bonded real estate agent. But, contend the defendants, there is nothing illegal in a person's contracting to sell something he does not own; his obligation being either to purchase the thing in question and then turn it over to the person to whom he has contracted to sell it, or to make good in damages such loss as may be sustained by his inability to carry out his contract of sale. This may be true as a matter of fact

in the ordinary case, but it should be borne in mind that here the Texas Company was dealing, as we have stated, with a licensed and bonded real estate agent, and under such circumstances it was the plain duty of the real estate agent to unequivocally advise the Texas Company that he did not own the property, but that he would attempt to buy it, and, if he could, to turn it over to them and keep for himself such profit as he might make. Denson vs. Stewart et al., 15 La. Ann. 456; Harvey vs. Pohlmann, No. 8125 Court of Appeal, Parish of Orleans, decided April 10, 1922 (Teissier's Orls. App., Digest, p. 31). It is true that the offer, which was contained in one of Mattison's own printed forms, did not, in the address to him, contain the word "agent," but in the body of the document it was stated that the Texas Company, in the event of acceptance of the offer, was to deposit with "Mattison, agent," the sum of $1,250, and in view of this fact, we fail to see how it can now be contended that Mattison was acting not as agent for the owner, nor as agent for the Texas Company, but as a principal who intended to buy the property and turn it over at a profit. The other documents in the record show conclusively that Mattison intended to purchase the property for a price that was only a little more than half of what the Texas Company offered to pay, and to then turn it over to them at a substantial profit.

The fact that the original contract was not attached to the petition, and that plaintiff could not produce it, was explained by the statement of plaintiff's officials that it had never been sent to them by Mattison. No effort was made to show that the original contract was not identical with the copy which has been introduced, and, in view of the positive evidence that the copy was identical with the original, we do not see that defendants have suffered any harm by reason of the substitution of the copy. Even if the Texas Company is incorrect and the originals were sent them, and have been lost by them, there is no question, according to them and to Mattison, that the copy is a true copy of the original.

The contention of the sureties that the case should have been dismissed on an exception of no cause of action appears to us to be without merit. It is based on the theory that the petition shows that the Texas Company dealt with Mattison as principal and not as agent. Since we have come to the conclusion that the petition, when read in connection with the contract, shows that he was employed as agent, it necessarily follows that the exception of no cause of action was properly overruled. To sum the matter up, we are of the opinion that Mattison was employed as a real estate agent by the Texas Company and in his said capacity was given the sum of $1,250 to be used by him in binding the sale which he was to contract in behalf of the Texas Company, and we are further of the opinion that the receipt of such a deposit is within the scope of the duties of a real estate agent within the contemplation of Act No. 236 of 1920.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellants.

WESTERFIELD, J. (dissenting). The bond sued on in this case is statutory. The duties of a real estate agent are defined in the statute. They do not include the collection of the price of the property, the sale of which they negotiate. The obligations of the bond are not more extensive than the statute imposes. I, therefore, respectfully dissent.