YARRUT, Judge.
Plaintiffs sued the estate of Robert L. Hickerson, deceased lawyer-notary, in solido with the surety on his notarial bond, and his professional liability insurer, for $39,-458.70, interest and costs. The basis of Plaintiffs’ claim is that during August 1959, they employed the deceased as their attorney and notary to represent them in the purchase of 50 lots of ground (in St. Bernard Parish) and, because he failed to properly perform his professional duties, they failed to obtain valid title to 17 of the 50 lots transferred, which their vendor had previously sold, and for which they paid $2300.00 per lot, and $358.70 taxes. Defendants denied liability, contending:
1.Hickerson was not employed as attorney, but acted solely as notary to prepare and execute the usual notarial act of sale;
2. In the alternative, that Plaintiffs had knowledge of the non-ownership by the vendor of the 17 lots, and were guilty of contributory negligence in not observing the mortgage and conveyance certificates which disclosed this fact;
3. That Plaintiffs suffered no loss thereby, because they had paid the purchase price long before the execution of the formal notarial act of sale and purchase, and hence could not have been misled by Hick-erson, who was not employed to examine the title because a title bond had been issued to Plaintiffs’ vendor;
4. That, in any event, they are entitled to a credit of $10,000.00 which Plaintiffs received on account of a re-purchase agreement between them and their vendor, which was never consummated;
5. Parol evidence was improperly admitted by the District Court to prove Hick-erson’s employment as attorney, as the suit was brought more than one year after his death, and the testimony of the Plaintiffs’ executive officers was not corroborated as required by law. LSA-R.S. 13:3721 and LSA-R.S. 13:3722.
Defendant (notarial insurer) filed a third-party action against the Succession representatives to recover $10,000.00 (the limit of its coverage) as the deceased had indemnified it against loss. The professional liability insurer filed a third-party action against the vendor, Deep River Development Corporation, and its Secretary, E. B. Breazeale, charging it was Breazeale’s active fraud and misrepresentation which led Hickerson into the error about the lack of title to the 17 lots, and prayed for judgment over and against them for any judgment that might be rendered against said Defendant in the main demand.
The District Court rendered judgment in solido against all Defendants for $10,000.00; and further judgment in solido for $29,-458.70 against the same Defendants, excluding the notarial insurer (whose liability was limited to $10,000.00) ; and third-party *370 judgment in favor of notarial insurer, against the Succession representatives, for $10,000.00 by virtue of the deceased’s indemnification. No judgment was rendered on the professional insurer’s third-party action.
While the transcript of the testimony is garbled in some instances, the facts as disclosed are substantially as follows:
By agreement dated August 2, 1959, Plaintiffs agreed to purchase from Deep River Development Corporation 50 lots of ground located in St. Bernard Parish for $115,000.00, at that time depositing on account of the purchase price, $38,000.00. The agreement recited the act of sale was to be passed before purchaser’s notary,' vendor to be responsible for the payment of all fees and costs.
On behalf of Plaintiffs, C. J. True, President of C. J. True Corporation, contacted Hickerson and employed him as both attorney and notary to represent both Plaintiffs in connection with the acquisition of the property. Because Hickerson advised True he was familiar with the title to the lots, and there was an outstanding title bond issued to the vendor, no written title opinion was requested of Hickerson.
Subsequent to the execution of the purchase agreement, and prior to the execution of the notarial act of sale, three additional payments were made by True for his corporation to the vendor, totalling $41,500.00.
On November 3, 1959, the date of the execution of the notarial act, all parties met in Hickerson’s office, at which time Hickerson advised the Presidents of the respective purchasers that their corporations were acquiring good and clear title to all 50 lots. When they inquired about Hicker-son’s fee, he assured them his fee would be deducted from the proceeds of the sale.
Hickerson, as Plaintiffs’ (purchasers’) notary and attorney, executed the act of sale of all 50 lots, in which act was recited:
“By reference to the certificate of the Register of Conveyances and Recorder of Mortgages in and for the Parish of St. Bernard, annexed hereto, it does not appear that the said property has been heretofore alienated by the vendor or that it is subject to any encumbrance whatever, with the exception of the following inscriptions which the vendor obligates himself to have cancelled and released out of the proceeds of this sale:
“Mortgage by Deep River Development Corporation in Favor of Oliver H. Dabezies, as per act before George E. Konrad, N.P., dated November 13, 1958. Amount of mortgage $17,500.00, interest 6%, payable one year after date, recorded November 17, 1958 in MOB 59, folio 397.
“Mortgage by Deep River Development Corporation in favor of Robert L. Hickerson as per act before George E. Konrad, N.P., dated February 6, 1959. Amount of mortgage $12,000.00, interest 6%, payable on demand, recorded February 9, 1959 in MOB 60, folio 354.
“Mortgage by Deep River Development Corporation in favor of Oliver H. Dabezies as per act before George E. Konrad, N.P., dated February 20, 1959. Amount of mortgage $11,-000.00, interest 8%, payable on or before sixty days, recorded February 24, 1959 in MOB 60, folio 427.”
The conveyance certificate, attached to the act, revealed a prior alienation of the property by Deep River, as follows:
“Sale by Deep River Development Corporation to Home Building and Loan Association, as per act before Arthur J. O’Keefe, Jr., N.P., dated February 13, 1959, recorded February 17, 1959, in COB 72, folio 36.”
This above inscription referred to a sale in which Deep River sold the 17 lots in question through the Home Building and Loan Association to Ervin B. Breazeale *371 (Secretary of Deep River), in which that Association retained a vendor’s lien and mortgage for $40,000.00.
Upon execution of the act of sale involved herein, a check of Aladdin Oil payable to Deep River, for $38,500.00 was delivered to Breazeale (Secretary of the vendor corporation) who endorsed it in blank, and gave it to Hickerson, who deposited it in his own bank account. As the previous deposits made by True Corporation exceeded its portion of the purchase price, Hickerson gave his personal check for $3,000.00 as a refund to True Corporation.
In June 1960, when Mr. True first discovered that Plaintiffs had no title to the 17 lots, he contacted Hickerson, who admitted his error and accepted full responsibility for the loss. Later, Hickerson wrote Mr. Laslie (officer of Aladdin Oil Co.) that, even though the conveyance certificate revealed the prior sale by Deep River to Breazeale (through the Building and Loan Association), he relied upon statements of Breazeale that the Association’s vendor’s lien and mortgage, involved therein, had been paid.
The testimony of Mr. True, of the C. J. True Corporation, Mr. Laslie and Mr. Walmsley, officers of Aladdin Oil Co., clearly reveals they employed Hickerson, both as their attorney and notary, and that Hickerson fully understood his employment as such.
Mr. Laslie admitted he did not request Hickerson to examine the title or to get a title insurance policy, for the reason stated above, but assumed that Hickerson, in his capacity as attorney, acting in their behalf, would protect them; and that Hickerson stated at the sale they were getting clear title.
After their purchase, Hickerson continued to represent Plaintiffs in selling 33 of the lots and, upon discovery that Plaintiffs did not get good title to the 17 lots, admitted his error and accepted full responsibility therefor.
Mr. Laslie also testified that he conferred with Hickerson on three separate occasions and asked him what he intended to do about the 17 lots. Hickerson answered that it was the first time he had made such a mistake; was very upset and asked for time to correct his error; and, at a meeting in Mr. True’s office with Mr. Hickerson and Breazeale, Hickerson again accepted full responsibility, reiterated the fact that he had never made this type of mistake before, and that he was fully responsible and would correct his error.
On December 21, 1960, Hickerson wrote Laslie that, though the conveyance certificate revealed the prior sale by Deep River to Breazeale, through the Home Building and Loan Association, he did not check the Conveyance records, because Breazeale assured him the loan had been paid and, since it was not reported on the mortgage certificate, he accepted Breazeale’s statement at face value.
The record preponderates that Hick-erson was employed and acted in the dual capacity of attorney and notary for Plaintiffs in their purchase of the 50 lots. It was Hickerson’s duty, both as attorney and notary, to advise his clients of the prior sale-of the 17 lots to Breazeale, as such sale was disclosed on the conveyance certificate which he, as notary, had procured, and for which he was paid a fee by Plaintiffs. It was not sufficient for him to accept Brea-zeale’s bare word that he had “taken care”' of the homestead’s vendor’s lien and mortgage resulting from the sale and re-sale of the 17 lots. Breazeale was adversely interested and Plaintiffs had employed Hicker-son, not Breazeale, to protect their interest,, so Hickerson relied on Breazeale’s word at his own risk. In fact, Plickerson was interested in the matter because he held a. $12,000.00 mortgage on some of the lots, which was paid from the proceeds of the-sale.
In his reasons for judgment, the District Judge found that Hickerson had failed in his duty to Plaintiffs, both as at *372 torney and notary. Clearly Hickerson was acting as notary for Plaintiffs since the agreement of sale stipulated that the act of sale was to he passed before purchaser’s notary; and Hickerson’s fee as notary was paid by the purchasers for obtaining the conveyance and mortgage certificates. It is true that Plaintiffs did not employ Hick-erson to examine the title and Hickerson was not liable for any title defect up to the vendor’s acquisition. However, though an attorney-notary may not have been employed to abstract and research the title, when competent evidence is brought to his attention of the prior alienation of title by his clients’ vendor, it is his duty to inform and protect them against loss, not close his eyes and depend on the representation of one adversely interested that the title defect has been corrected.
An attorney is responsible for any injury resulting from his neglect of business entrusted to him. Thompson v. Lobdell, 7 Rob. 369.
All relations of agency are affected with a trust, and in no case is the rule more exacting in its requirements than as applied to the relation of attorney and client. Parkerson v. Borst, 5 Cir., 264 F. 761.
An attorney employed to examine the title to real property must exercise reasonable care and skill in the matter, and his failure to do so is negligence for which he will be liable to his client in damages for the loss occasioned. S Am.Jur. 132, p. 338.
Attorneys are held to the same rule of liability for want of professional skill and diligence in practice and for erroneous or negligent advice to those who employ them as are physicians, surgeons, and others who hold themselves out to the world as possessing skill and qualifications in their respective trades and professions; they are liable for the want of such skill, care, and diligence as men of the legal profession commonly possess and exercise in matters of professional employment. 5 Am.Jur. 125, p. 334; 7 C.J.S. Attorney and Client § 140, p. 977.
Every notary who shall pass an act of sale, mortgage or donation of an immovable, shall be bound to obtain from the office of Mortgages of the place where the immovable is situated, a certificate declaring the privileges or mortgages which may be inscribed on the object of the contract, and to mention them in his act, under penalty of damages towards the party who may suffer by his neglect in that respect. LSA-C.C. Art. 3364; LSA-R.S. 9:2928.
The sureties on the official bond of a notary public are liable for any loss, or damage, to any one injured by his negligence or neglect of duty. Caruso v. Fidelity & Deposit Co. of Maryland, La.App., 199 So. 532; Lacour v. National Surety Co., 147 La. 586, 85 So. 600, 18 A.L.R. 1295; Stork v. American Surety Co., 109 La. 713, 33 So. 742; Rochereau v. Jones, 29 La.Ann. 82.
Regarding Defendants’ contention that Plaintiffs suffered no loss at the hands of Hickerson because they paid the purchase price long prior to the notarial act of sale, $38,000.00 at the time of the initial agreement and $41,500.00 in three separate installments, totalling $79,500.00, these payments were so made before the notarial act, but the balance of $35,500.00, due on the purchase price of $115,000.00, was paid at the execution of the notarial act, which was almost sufficient to offset the 17 lots at $2300.00 each, with reference to which Plaintiffs could have protected themselves had Plickerson properly called the matter to their attention.
Regarding Defendants’ alternative claim for credit of $10,000.00 paid to Plaintiffs under the re-purchase agreement for $140,-000.00 made with their vendor, the record shows that on August 3, 1959, the day after the agreement of sale in question, Plaintiffs agreed to re-sell the same 50 lots to their former vendor for $140,000.00, and the latter deposited $10,000.00 of the price on account. In the meantime, Plaintiffs sold 33 of the lots to others, and there is nothing in the record to show that their former *373 vendor and re-purchaser was in default or forfeited the $10,000.00; hence, Plaintiffs were obligated to return the $10,000.00 to it.
However, as Plaintiffs’ vendor was indebted to them for the value of the 17 lots it failed to transfer to them, Plaintiffs’ obligation to return the $10,000.00 to their vendor was cancelled by confusion pro tanto with their vendor’s obligation to reimburse them for the price of the 17 lots, thereby reducing their vendor’s liability pro tanto from $39,458.70 to $29,458.70. Accordingly, Hickerson’s liability to Plaintiffs was thereby reduced to the latter amount, for which Defendants are liable as surety of Hicker-son. LSA-C.C. Arts. 2217-2218.
For the above and foregoing reasons, the judgment of the District Court is amended to allow Defendants credit for the $10,-000.00, to be proportioned between the Defendant-insurers as their respective liability bears to the total award, now reduced to $29,458.78; costs in the District Court to be paid by Defendants, and costs on appeal to be paid by Plaintiffs.
Judgment amended and, as amended, affirmed.