420 So.2d 1094 (1982)
Wilbert L. ROTH
v.
B & L ENTERPRISES, INC. and F. Robert Porter.
No. 82-C-0845.
Supreme Court of Louisiana.
October 18, 1982.
*1095 Garland R. Rolling, Michael Baham, Metairie, for applicant.
Gordon K. Konrad, Metairie, for respondents.
DIXON, Chief Justice.[*]
This is a suit in warranty brought by a purchaser of real estate against his vendor. On January 6, 1977 plaintiff, Wilbert L. Roth, entered into an agreement with defendant, B & L Enterprises, Inc., to purchase certain immovable property owned by B & L located in Rural Park Subdivision, Jefferson Parish, for $12,000. The listing agreement stipulated that the purchaser was to choose the notary to pass the act of sale. Roth retained F. Robert Porter, a notary public, to execute the act of sale. Though made a defendant, Porter was never served with process, despite several attempts to locate him.
At the passing of the act of sale, Roth made his check for $12,000 payable to Porter. There is a dispute between the parties as to whether the notary or the president of B & L Enterprises, Inc., Melvin J. Berthelot, instructed the purchaser to make the check payable to the notary. Under either version, B & L approved of this method of payment.
At the time of the act of sale, there existed outstanding pavement and improvement liens against the property which amounted to approximately $5250.00. Roth testified that he was unaware of the existence of these liens at the time of the sale. Both B & L and Porter knew of these encumbrances and it was understood between them that Porter was to pay them out of the proceeds of the sale. Porter was also retained by B & L to satisfy liens on other property owned by B & L from the $12,000 sales price. Some time after the sale, Porter gave B & L a check for $274.00, presumably the net proceeds remaining after the liens had been paid. However, instead of canceling the liens, Porter absconded with the money.
Plaintiff discovered the existence of the liens for the first time upon receiving a bill for their payment from Jefferson Parish. He has since made periodic payments on the liens.
Judgment was rendered by the trial court rejecting plaintiff's demands for payment of the liens, concluding that Porter was Roth's agent and that Roth was bound by *1096 his agent's activities. This judgment was affirmed in the court of appeal. Roth v. B & L Enterprises, Inc. and F. Robert Porter, 411 So.2d 627 (La.App.1982). Upon plaintiff's application, we granted a writ of certiorari to review the judgments of the lower courts.
Plaintiff argues first that the mere act of hiring a notary public to pass an act of sale does not constitute that notary as the purchaser's agent. When Roth paid the notary a $100.00 fee to execute the act of sale, he was unaware of the existence of liens on the property. The act of sale corroborates this nondisclosure of the liens; that document contained language reciting that the property did not appear to be "subject to any encumbrance whatever."
In the early case of City of New Orleans v. Bienvenu, 23 La.Ann. 710 (1871), the Louisiana Supreme Court recognized a notary to be "... an officer appointed by the Governor by and with the advice and consent of the Senate, and commissioned and sworn as such...." R.S. 35:1 codifies the procedure for executive appointment of notaries public, subject to legislative approval. In addition, the legislature regulates the profession by enumerating its general powers (R.S. 35:2), by determining the place where notarial acts can be executed (R.S. 35:10), by outlining the qualifications of prospective applicants (R.S. 35:191), and by requiring a bond of $5000.00 conditioned upon the faithful performance of a notary's duties (R.S. 35:191).
Among the general powers of notaries public listed in R.S. 35:2 is the power to "make ... conveyances, and generally, all contracts and instruments of writing."[1] It has been held previously by this court that the notarial powers listed in this statute were not exclusive and that the notary's "... obligation is to perform all the duties incumbent upon him, or else he will be liable to those by whom he is employed...."[2]Stork v. American Surety Co. of New York, 109 La. 713, 716, 33 So. 742, 743 (1903); Schmidt v. Drouet, 42 La.Ann. 1064, 8 So. 396 (1890). The enumerated powers, however, are not the discretionary powers commonly associated with persons such as brokers, intermediaries and attorneys at law. The responsibilities included in R.S. 35:2 and its predecessor statute do not suggest that a notary is regarded by the legislature as a depositary or custodian of proceeds of the parties. This court has agreed that a notary's "... office is not one of deposit ..." (emphasis added), finding that a notary receives funds not in his official capacity, but rather as a trusted individual. Rochereau v. Jones, 29 La.Ann. 82, 85 (1877). Furthermore, the bond required of notaries is only for the minimal sum of $5000.00, not a sufficient amount to protect innocent parties who entrust their funds to a notary acting in his official capacity. R.S. 35:191. Even though a notary may typically be entrusted with the proceeds from real estate transactions, by receiving the funds, the notary is acting on behalf of *1097 the parties to the act of sale and not in his official capacity as notary.
The general rule is that if a vendee unilaterally delivers the sales price to the notary, the vendee bears the risk of the notary misusing the funds since the notary is merely acting as his depositary. Saloy v. Hibernia National Bank, 39 La.Ann. 90, 1 So. 657 (1887); Brown v. Schmidt, 7 La. Ann. 349 (1852); Breen v. Schmidt, 6 La. Ann. 13 (1851). The vendee is merely depositing the proceeds with the notary until the vendor accepts them for payment.
In order to satisfy his obligation of tendering the purchase price, the vendee must pay either the vendor or an agent of the vendor. If payment is made to an unauthorized individual, the payment is valid only if the vendor has either ratified this procedure or profited by it. C.C. 2140.[3] Accordingly, if the vendor consents to delivery of the sales price to the notary, this constitutes payment and the vendor bears the risk of the notary's embezzlement. Breen v. Schmidt, supra.
In the instant case it is unclear as to whether B & L directed Roth to make the check payable to the notary or whether B & L merely agreed to this mode of payment.[4] Even if B & L did not explicitly authorize the notary to accept the funds at the act of sale, B & L ratified this receipt of the purchase price by asking Porter to use these proceeds to pay off other outstanding obligations as well as the liens on the sale property, the existence of which had not been disclosed to Roth. B & L designated Porter as its mandatary when they verbally agreed that Porter would pay off the liens. C.C. 2985, 2992. B & L regarded the money as its own and so bore the risk of the mismanagement of its agent. Breen v. Schmidt, supra.
When Roth exercised his right as purchaser to choose the notary, he selected Porter only to perform the notarial function of passing an act of sale. The primary role of a notary at an act of sale is "... to assay the identity of the parties, their marital status, their capacity to contract, and their willingness to do so...."[5] Roth hired Porter to fulfill his traditional notarial functions, while B & L used Porter as its agent to satisfy the outstanding liens.
As notary, Porter was required by C.C. 2251 to record the completed act of sale. Similarly, at the time of this transaction, he was also required by C.C. 3364 (repealed 1978)[6] to obtain a mortgage certificate and to mention the existence of any mortgages in the act of sale. Porter breached one of his statutory obligations by failing to record the outstanding liens in the act of sale.
Porter would be liable as notary for any damage Roth suffered in reliance on the *1098 erroneous recitation in the act of sale. Roth did not know of the liens on the property in part because this fact was not disclosed in the act of sale. However, B & L, the vendor, breached its obligation of warranty by failing to notify Roth of the liens. The vendor, in a sale made with express full warranties, warrants his vendee against any undeclared and nonapparent mortgages, privileges, or other charges that burden the property at the time of the sale. C.C. 2501; Richmond v. Zapata Development Corp., 350 So.2d 875 (La.1977). A vendor can only be relieved of this obligation by a stipulation to the contrary in the act of sale. A vendee can assume the payment of any encumbrances by deducting from the purchase price a sufficient amount to discharge the liens. Jaenke v. Taylor, 160 La. 109, 106 So. 711 (1925). However, this procedure must be clearly agreed to by the parties and both parties must be aware of the existence of the encumbrances. In the instant case, since Roth had no knowledge of the outstanding liens, he could not consent to the payment of them. The act of sale does not indicate that Roth agreed to deduct a proportional amount from the purchase price to satisfy the liens.
Rather, the evidence shows that B & L attempted to pay off the liens by appointing Porter to carry out its obligation. Since Porter failed to perform this duty, B & L must assume responsibility for the criminal conduct of its own agent in embezzling its funds. The mere fact that the agent happened to be a notary cannot relieve B & L of its obligation to attend to the payment of the liens. The damage Roth suffered is attributable solely to the failure of B & L to pay off the outstanding liens on the property.
C.C. 2475 obligates a seller to deliver and to warrant the object that he sells. Here the act of sale recited that the sale was made with full warranties, including the warranty referred to in C.C. 2501 "... against the charges claimed on such thing, which were not declared at the time of the sale." The fact that the buyer could have discovered the liens by searching the public records is not sufficient to relieve the seller of his statutory obligation of warranting against undeclared charges. Richmond v. Zapata Development Corp., supra. The buyer is entitled, as between himself and his seller, to rely upon the deed as written. Cf. Collins v. Slocum, 317 So.2d 672 (La.App.), writ denied 321 So.2d 364 (La.1975). The seller cannot relieve himself of the obligation of warranty by shifting the burden to the buyer to discover nonapparent encumbrances on the property. The seller entrusted the notary with the authority to cancel the outstanding liens. Porter failed to comply with both his statutory obligation of producing a mortgage certificate and his assumed obligation to B & L to pay off any encumbrances on the property. The duty to attend to the payment of liens rests with the seller. The seller delegated this responsibility to the notary; since the notary did not comply with the seller's instructions, the seller must sustain the loss.
For the reasons assigned, the judgments of the lower courts are reversed, and there is now judgment in favor of Wilbert L. Roth and against B & L Enterprises, Inc. in the full sum of $5250.00, with legal interest from date of judicial demand, and all costs of these proceedings.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
According to the majority opinion, when two innocent parties to a transaction are defrauded by a dishonest notary hired by one party, the other innocent party who had nothing to do with selecting the notary must bear the loss. This result is reached by resorting to the law of agency and presuming B & L's "ratification" of the mode of payment. However, this approach overlooks the trial court's findings that Roth knew or should have known of the encumbrance on the tract, the customary practice for the purchaser's notary to pay the seller only after clearing the property of any encumbrances, and the vendee's legal right to *1099 hold a portion of the price to retire any debts affecting the property. I believe that the facts and the law more justly and fairly support the sellers in this case.
NOTES
[*] Judge E.L. Guidry, Jr. of the Court of Appeal, Third Circuit, participated in this decision in place of Lemmon, J., recused.
[1] "Notaries public have power, within their several parishes, to make inventories, appraisements, and partitions; to receive wills, make protests, matrimonial contracts, conveyances, and generally, all contracts and instruments of writing; to hold family meetings and meetings of creditors; to receive acknowledgments of instruments under private signature; to affix the seals upon the effects of deceased persons, and to raise the same. All acts executed by them, in conformity with the provisions of article two thousand two hundred and thirty-four of the Civil Code, shall be authentic acts." R.S. 35:2 (West 1964).

This version of the statute was applicable to the instant case. R.S. 35:2 has since been twice amended by Acts 1977, No. 354, § 1 and Acts 1981, No. 406, § 1.
[2] This court referred to Rev.St.1870, § 2492, the predecessor of the present R.S. 35:2. The language in both statutes is substantially the same.

"Sec. 2492. Notaries public shall have power, within their several parishes, to make inventories, appraisements, partitions, to receive wills, make protests, matrimonial contracts, conveyances, and generally all contracts and instruments of writing; to hold family meetings and meetings of creditors; to receive acknowledgments of instruments under private signature; to affix the seals upon the effects of deceased persons, and to raise the same; and all acts executed by them, in conformity with the provisions of article two thousand two hundred and thirty-one of the Civil Code, shall be authentic acts."
[3] "The payment must be made to the creditor, or to some person having a power from him to receive it, or who is authorized by a court, or by law, to receive it for him.

Payment made to a person, not having power to receive it for the creditor, is valid, if the creditor has ratified it, or has profited by it." C.C. 2140.
[4] The act of sale recites that:

"This sale is made and accepted for and in consideration of the price and sum of TWELVE THOUSAND AND NO/100 DOLLARS____($12,000.00) Dollars, Cash, which the said purchaser has well and truly paid, in ready and current money to the vendor, who hereby acknowledges the receipt thereof and grants full acquittance and discharge therefor." (Emphasis added).
This language verifies Roth's testimony that by paying the $12,000 to Porter, he understood that he was complying with the desires of B & L.
[5] See Burke and Fox, The Notaire in North America: A Short Study of the Adaptation of a Civil Law Institution, 50 Tul.L.Rev. 318, 333 (1976).
[6] "Every notary who shall pass an act of sale, mortgage or donation of an immovable, shall be bound to obtain from the office of mortgages of the place where the immovable is situated, a certificate declaring the privileges or mortgages which may be inscribed on the object of the contract, and to mention them in his act, under penalty of damages towards the party who may suffer by his neglect in that respect." C.C. 3364.

This article was later repealed by Acts 1978, No. 651, § 3, but was still in effect at the time of the act of sale.